**NATIONAL LABOR RELATIONS BOARD**
**v. SIDRAN.**

No. 13022.

United States Court of Appeals
Fifth Circuit.

April 25, 1950.

Richard C. Keenan, Chief Law Officer, National Labor Relations Board, New Orleans, La., David P. Findling, Assistant General Counsel, National Labor Relations Board, Washington, D. C., A. Norman Somers, Assistant General Counsel, National Labor Relations Board, Washington, D. C., for petitioner.

Emil Corenbleth, Dallas, Tex., for respondent.

Before HOLMES, McCORD, and BORAH, Circuit Judges.

McCORD, Circuit Judge. :

This is a petition for enforcement of an order of the National Labor Relations Board issued against Joseph Sidran, doing business under the name of Sidran Sportswear, on January 25, 1949. Respondent is engaged in the manufacture of ladies' sportswear at its' plant in Brownwood, Texas, and it·is without dispute that jurisdiction of this labor dispute exists under the Act. National Labor Relations Act, Title 29 U.S.C.A. § 151 et seq.,.as amended by the Labor Management Relations Act of 1947, Title 29 U.S.C.A. § 141 et seq.; see also, 81 N.L.R.B. 270. ;

: The main questions presented are (1) whether the Board' properly found that respondent's refusal to bargain with the union involved, after a determination by the Regional Director without a hearing that·it was the exclusive bargaining representative of respondent's employees, was in violation of Section 8(a) (5) and (1) of the Act; and (2) whether a speech made by respondent to his employees on November 12, 1946, constituted merely free speech by an employer protected ·by Section 8(c) of the Act, or restraint, interference and coercion prohibited by Section 8(a) (1) of the· Act.

On October 14, 1946, an agreement for a consent election was entered into between the International Ladies' Garment Workers Union, A. F. L., and respondent, which provided: "An election by secret ballot shall be conducted under the·supervision of the Regional Director, among the employees in the Unit defined below, at the indicated time and place, to determine whether or not the employees desire to be represented by (one of) the undersigned labor organization(s). Said election shall be held in accordance with the National Labor Relations Act, the Board's Rules and Regulations, and the customary procedures and policies of the Board, provided that the determination of the Regional Director shall be final and binding upon any question, including questions as to the eligibility of voters, raised by any party hereto relating in any manner to the election."

· The consent election·agreement also included certain other provisions concerning eligible voters, notices of the election, observers, and for the filing of objections to the conduct of the election with the Regional Director within five days after issuance of the tally of ballots.

The election was held in accordance with the above agreement on November 13, 1946. A total of 75 votes were cast, including 33 votes for the union, 30 against and 12 votes which were challenged. The respondent, within the five day period allowed after the election, filed objections to the conduct of the election in which he protested five of the challenged votes on the ground that such persons were not on the payroll eligibility list agreed upon, and requested that the votes of six so-called "bundle girls" who had been ·challenged by the union be counted. Respondent had always contended that these "bundle girls" were production workers who should be included in the unit, and permitted to vote in the election. The union, however, had consistently maintained that they were supervisory employees who should be excluded from the unit and who were not entitled to have their votes counted. Accordingly, the union filed objections to the counting of the votes of the six "bundle girls" whose status was in dispute, and respondent filed answer and exceptions to the union's objections as to these employees. Thereafter, upon the basis of an undisclosed and independent investigation, and without affording the respondent a hearing on this issue, the Regional Director filed a "Report on Objections to Election and Challenged Ballots" in which he allowed the ballots of five persons challenged by respondent as not being on the list of eligible voters, and disallowed the votes of the six "bundle girls" challenged by the union. In this report, after finding that the challenges to the votes cast in the election were sufficient in number to affect the final result, the Regional Director proceeded to set out detailed findings of fact based upon his investigation as to the status of the employees whose ballots had been challenged, and concluded therefrom that the "bundle girls" were supervisory or managerial employees whose votes should not be counted

in the election, as the union had contended. Respondent filed objections and exceptions to this report of the Regional Director with the Board, but was advised that the Board would not consider same, and that such matters could properly be raised only in an unfair labor practice proceeding. Thus, after the report was issued and appropriate action was taken on the challenged votes, the count stood 36 for the union and 32 against. The Regional Director thereupon certified the union with the Board as the recognized bargaining representative of respondent's employees. It is, therefore, without dispute that the votes of the six "bundle girls", whose votes were not counted, would still control the result of the election. After certification of the union by the Regional Director the respondent refused to bargain with the union on the ground that the election was invalid, whereupon these charges of unfair labor practice were filed against respondent on February 19, 1947, and complaint was issued thereon on April 23, 1948.

■ We are of opinion decision here must turn on the validity of the report of the Regional Director. It was admitted in evidence over respondent's objection in the hearing before the Trial Examiner, and considered as competent legal evidence binding on respondent upon review by the Board. The report was admittedly based upon an undisclosed *ex parte* investigation, and no hearing was ever held to support it. Respondent had no opportunity to be heard, to examine and cross-examine witnesses, or to produce any evidence in his own behalf which might have tended to impeach or contradict the facts found by the Regional Director as to the status of these challenged employees. Manifestly, the Board's action in considering such report was not within its discretionary power, but under the circumstances arbitrarily deprived respondent of a fair trial. Cf. Ford Motor Co. v. N.L.R.B., 305 U.S. 364, 59 S.Ct. 301, 83 L.Ed. 221; Morgan v. United States, 304 U.S. 1, 58 S.Ct. 999, 82 L.Ed. 1129; see also, N.L.R.B. v. Whittier Mills Co., 5 Cir., 111 F.2d 474.

■ We do not interpret or construe the consent election agreement or the applicable Board rules and regulations as providing for any waiver of a hearing in such cases. While it is true that under the election agreement respondent consented that the determination of the Regional Director would be final and binding upon the issue as to the eligibility of voters, he did not thereby intend to forfeit his right to submit evidence and to be heard, nor did he intend to confer upon the Regional Director an unbridled administrative discretion to decide such an important issue solely upon an *ex parte* investigation and without any notice to respondent of the source upon which the facts found were based. Certain it is that employers will be reluctant to sign such consent election agreements providing for the prompt settlement of representation issues, and designed to minimize delay in the administration of the Act, if by doing so they are held to be estopped and foreclosed from asserting their right to be heard on a vital issue in the case. Moreover, if a Regional Director, under the guise of exercising a mere administrative discretion, can decide strongly contested issues of voting eligibility without a hearing, he can in many instances arbitrarily determine a representation issue where the election results are destined to be close adversely to either union or employer without even revealing the basis for such action. We find no logical justification either in the Act, the Board rules and regulations, or the consent election agreement for thus extending the discretionary powers of the Board or Regional Director so as to impair and infringe upon a party's constitutional rights.

The cases of N.L.R.B. v. A. J. Tower Co., 329 U.S. 324, 67 S.Ct. 324, 91 L.Ed. 322, and N.L.R.B. v. Capitol Greyhound Lines, 6 Cir, 140 F.2d 754, 756, cited and relied upon by the Board, are readily distinguishable under their own facts, and are in no wise authority in justification of the Regional Director's failure to grant a hearing here. In both of those cases the opinions specifically recite that a hearing on the objections to the conduct of the elec-

674

tion was held before the Regional Director. In this connection, the Court of Appeals for the Sixth Circuit, in the Capitol Greyhound Lines case observed: *"Formal hearing* by the Regional Director was had on these objections, testimony of witnesses was adduced, documentary evidence received and a transcript of the proceedings preserved. The Regional Director subsequently promulgated his report on the consent election in which he overruled all of respondents' objections and held that the Union had been duly designated and selected by a majority of the employees in the Unit as their exclusive bargaining representative."

■ Here, before ruling in favor of the union on the eligibility status of these challenged employees, it is without dispute that the Regional Director held no hearing of any kind, either formal or informal. Although the eligibility and representation issues were vital to the case, no testimony of witnesses was adduced on this score, no documentary evidence was received, nor was a transcript of any proceedings before the Regional Director preserved. The record nowhere reveals what evidence he relied upon, how his investigation was conducted, or by what rules it was governed. Moreover, we can find no authority sufficient to justify his action in this regard, and do not believe that any such *valid* authority exists. We are therefore constrained to believe that under the circumstances here involved the failure of the Regional Director to grant a hearing to the parties on the eligibility issue was arbitrary and capricious as an unwarranted exercise of discretionary power under the Act, and contrary to all valid rules and regulations of the Board. Cf. N.L.R.B. v. Falk Corporation, 308 U.S. 453, 60 S.Ct. 307, 84 L.Ed. 396; N.L.R.B. v. Prudential Ins. Co., 6 Cir, 154 F.2d 385; N.L.R.B. v. Indiana & Michigan Electric Company, 318 U.S. 9, 63 S.Ct. 394, 87 L.Ed. 579; Cf. N.L.R.B. v. A. J. Tower Co., 329 U.S. 324, 67 S.Ct. 324, 91 L.Ed. 322; N.L.

R.B. v. Capitol Greyhound Lines, 6 Cir., 140 F.2d 754. In so holding, we consider it particularly appropriate to refer to a pronouncement by our Supreme Court in the case of N.L.R.B. v. Indiana & Michigan Electric Co., 318 U.S. 9, 63 S.Ct. 394, 405, 87 L.Ed. 579, wherein the following language appears: "The Act accords a great degree of finality to the Board's findings of fact, and this Court has been insistent that the admonition of the Act be strictly observed. But courts which are required upon a limited review to lend their enforcement powers to the Board's orders are granted some discretion to see that the hearings out of which the conclusive findings emanate do not shut off a party's right to produce evidence or conduct cross-examination material to the issue. The statute demands respect for the judgment of the Board as to what the evidence proves. But the court is given discretion to see that before a party's rights are finally foreclosed his case has been fairly heard. Findings cannot be said to have been fairly reached unless material evidence which might impeach, as well as that which will support, its findings, is heard and weighed."

■ We have also read and carefully considered respondent's pre-election speech of November 12, 1946, and considering it as a whole we cannot agree that it is coercive so as to be violative of Section 8(a) (1) of the Act. We find from the record that the union itself considered this speech privileged in its answer to respondent's post election challenges and objections to the conduct of the election; that no charge of unfair labor practice was ever filed with reference to the speech, but that the complaint, which for the first time alleged any unfair labor practice in the making of the speech, was filed on April 23, 1948, almost a year and a half after the speech had been delivered. Moreover, when viewed fully and fairly in its entirety,[1] the speech does not transcend the bounds of legitimate argument, for it

1. Although in his pre-election speech respondent, Joseph Sidran, made several remarks to the employees similar to the following:

" * * * I hope I can make a success of this factory so I won't have to lease it or sell it for some other manufacturing

contains no threat of reprisal or force, or promise of benefit as would reasonably have tended to restrain, coerce, or intimidate these employees in the exercise of their right to organize and bargain collectively, but consists of non-coercive argument and free speech protected under Section 8(c) of the Act. N.L.R.B. v. Virginia Electric & Power Co., 314 U.S. 469, 62 S.Ct. 344, 86 L.Ed. 348; Big Lake Oil Co. v. N.L.R.B., 5 Cir., 146 F.2d 967; N.L.R.B. v. American Tube Bending Co., 2 Cir., 134 F.2d 993, 146 A.L.R. 1017, Id., 320 U.S. 768, 64 S.Ct. 84, 88 L.Ed. 459.

It follows that the certification of the union as the bargaining representative of respondent's employees was invalid because of the failure of the Regional Director to grant a hearing on the issue as to the voting eligibility of the challenged employees, and that respondent committed no unfair labor practice either in refusing to bargain with the union, or in the speech of November 12, 1946.

The petition for enforcement is denied.

business * * *"; it is without dispute that he also stated:

"* * * I have said repeatedly that each employee is free to join or not to join this union, or any other union, as he wishes. I fully recognize this privilege and assure every employee that his opportunity with the company will be the same whether he is a union member or not. I have no quarrel with the principle of collective bargaining. I stand ready at all times to bargain collectively with any union which has been selected by a majority of the employees in any appropriate bargaining unit. * * *"