**NATIONAL LABOR RELATIONS BOARD, Petitioner,**

v.

**NATIONAL SURVEY SERVICE, INC., Respondent.**

**No. 15348.**

United States Court of Appeals Seventh Circuit.

April 12, 1966.

Marcel Mallet-Prevost, Asst. Gen. Counsel, Leonard M. Wagman, Atty., Arnold Ordman, Gen. Counsel, Dominick L. Manoli, Associate Gen. Counsel, Elliott Moore, Atty., N. L. R. B., Washington, D. C., for petitioner.

Fred H. Daugherty, Chicago, Ill., Winston, Strawn, Smith & Patterson, Chicago, Ill., of counsel, for respondent.

Before HASTINGS, Chief Judge, and KILEY and SWYGERT, Circuit Judges.

HASTINGS, Chief Judge.

The National Labor Relations Board has petitioned this court for enforcement of its order requiring National Survey Service, Inc., (Survey) to bargain, up-

on request, with Chicago Journeymen Plumbers' Local Union 130, U. A. Technical Division, AFL–CIO (union).

Survey is an Illinois corporation, employing 13 persons, engaged in the business of making real property surveys. Out of Survey's 1963 gross volume of business of $164,499.30, $7,355 was derived from surveys made outside Illinois; $36,921 was derived from services for enterprises directly engaged in commerce; and $7,400 was derived from service performed for the City of Chicago, Department of Urban Renewal, which participates in a national federal program and receives federal funds.

On May 18, 1964, the Board's acting regional director (hereafter referred to as regional director), acting on a union petition, issued a decision and direction of election, finding that a unit of Survey's surveying employees was appropriate for bargaining.

Survey requested the Board to review the regional director's decision, objecting to the assertion of jurisdiction over Survey. The Board denied the request on the ground that it raised no substantial question.

The parties proceeded to an election on June 17, 1964. Of the six ballots cast, there were three votes for the union, one against and two were challenged. The union challenged the ballot of Robert Stevens on the ground that he was a licensed surveyor and therefore a "professional employee". It challenged the ballot of Nicholas Raimondi, on the ground that he was a supervisor. Survey objected to the challenges, arguing that they were improper.

Survey also filed objections to the conduct of the election, alleging that two union organizers had engaged in electioneering in the vicinity of the poll.

The regional director investigated the vote challenges and the charge of electioneering. The union challenge to Stevens' ballot was overruled on the ground that, although he was a licensed surveyor, he performed a job as a party chief, a classification included within the certified

unit. The union challenge to Raimondi's ballot, however, was sustained because the regional director concluded that he was a supervisor as defined in the Labor Management Relations Act, 29 U.S.C.A. § 152(11).[1]

The regional director made findings regarding Survey's electioneering charge and drew the conclusion that, in the absence of any evidence of coercive statements, there was no basis for setting aside the election.

In accord with his decisions on Survey's objections, the regional director certified the union as bargaining representative of the employees in the unit.

Survey filed a request for Board review of the regional director's supplemental decision and certification of representation. In its request, Survey repeated its electioneering charges and challenged the finding that Raimondi was a supervisor. Survey urged that the regional director had committed prejudicial error in deciding the question of Raimondi's supervisory status through the use of an affidavit submitted by Raimondi. Survey complained that it did not receive a copy of Raimondi's affidavit until after the regional director determined he was a supervisor.

On August 14, 1964, the Board denied Survey's request for review on the ground that it had raised no substantial issue warranting review.

On October 26, 1964, the regional director issued a complaint charging Survey with refusal to bargain with the union. Survey answered the complaint, admitting its refusal to bargain, but contended that the certification of the union was "null and void" and that the regional director's certification was illegal.

The Board's general counsel moved for judgment on the pleadings, but Survey requested an opportunity for oral argument. The matter was referred to a trial examiner, who directed Survey to state what issues it was prepared to tender, other than those already raised before the Board. The trial examiner further denied Survey's request for oral argument, but gave Survey an opportunity to file a brief.

Survey responded and amended its answer to the complaint. In its amended answer, Survey added an additional defense, claiming that the actions of the regional director were based upon an *ex parte* administrative investigation, which deprived Survey of a hearing, and that the certification was contrary to the provisions of the Labor Management Relations Act, the Administrative Procedure Act, and the Due Process Clause of the United States Constitution. These were essentially the same points made when Survey petitioned the Board to review the representation case.

On January 11, 1965, the trial examiner issued his decision. Since it did not appear to him that Survey proposed to offer any evidence which he could receive, he felt that a formal hearing would not serve any useful purpose. On the ground that Survey had admitted its refusal to bargain with the union and that the issues Survey sought to raise before him were issues already considered by the Board in the representation case, the trial examiner found Survey to have committed an unfair labor practice.

Survey filed exceptions to the trial examiner's decision. After consideration, the Board adopted the findings, conclusions, and recommendations of the trial examiner.

In opposing the petition for enforcement of the Board's bargaining order, Survey argues that the Board does not have jurisdiction over an employer conducting a small local land surveying service and that Survey should have been given a hearing at some stage of the administrative proceedings on the issue of the vote challenges and the conduct of the election.

1. Because the union challenge to Raimondi's ballot was sustained, Stevens' ballot was not opened or counted. Whichever way he had voted would have made no difference in the result.

Section 10(a) of the Labor Management Relations Act empowers the Board "to prevent any person from engaging in any unfair labor practice * * * affecting commerce." 29 U.S.C.A. § 160 (a). Commerce is defined in the Act, in part, as meaning "trade, traffic, commerce, transportation, or communication among the several States * * *." 29 U.S.C.A. § 152(6). "Affecting commerce" is defined as meaning "in commerce, or burdening or obstructing commerce, or the free flow of commerce * * *." 29 U.S.C.A. § 152(7).

The Supreme Court has declared that in passing the Act, "Congress intended to and did vest in the Board the fullest *jurisdictional* breadth constitutionally permissible under the Commerce Clause." National Labor Relations Board v. Reliance Fuel Oil Corp., 371 U.S. 224, 226, 83 S.Ct. 312, 313, 9 L.Ed.2d 279 (1963).

In 1959, Congress recognized the *Board's practice of limiting its caseloads* by not asserting its jurisdictional authority to its limit. In order to have the "no man's land" of doubt between federal and state authority occupied, Congress enacted 29 U.S.C.A. § 164(c) (1), which provides that "The Board in its discretion, may, by rule of decision or by published rules * * * decline to assert jurisdiction over any labor dispute * * where, in the opinion of the Board, the effect of such labor dispute on commerce is not sufficiently substantial to warrant the exercise of its jurisdiction * * *." In the event the Board declines jurisdiction, § 164(c) (2) authorizes state or territorial agencies to assert jurisdiction.

■ It is clear, therefore, that the Board has the fullest jurisdictional authority possible under the Constitution and that it may, but need not, decline jurisdiction.

■ While the Board has established and imposed upon itself jurisdictional standards which it customarily uses in determining when it will assert jurisdiction, these standards are not limitations on the jurisdiction conferred upon the Board by Congress. International Union, Progressive Mine Wkrs. v. N. L. R. B., 7 Cir., 319 F.2d 428, 435 (1963); N. L. R. B. v. Chauffeurs, Teamsters & Helpers, etc., 7 Cir., 274 F.2d 19, 23–24 (1960).

Survey, however, asserts that the Board's jurisdiction does not reach it because Survey is not engaged in commerce or any *activity affecting commerce.* Survey argues that surveying real estate does not involve buying or selling or owning and that surveying is essentially a local activity without significant impact on commerce.

If Survey's activity is sufficiently within commerce to be touched by the power of Congress under the Commerce Clause, then Survey may be regulated.

The Supreme Court has held that insignificant activities are subject to the commerce power:

"It is interstate commerce subject to regulation by Congress to carry lottery tickets from state to state. Lottery Case * * *, 188 U.S. 321, 355 [23 S.Ct. 321, 47 L.Ed. 492]. So also is it interstate commerce to transport a woman from Louisiana to Texas in a common carrier, Hoke v. United States, 227 U.S. 308, 320–323 [33 S.Ct. 281, 57 L.Ed. 523]; to carry across a state line in a private automobile five quarts of whiskey intended for personal consumption, United States v. Simpson, 252 U.S. 465 [40 S.Ct. 364, 64 L.Ed. 665]; to drive a stolen automobile from Iowa to South Dakota, Brooks v. United States, 267 U.S. 432, 436–439 [45 S.Ct. 345, 69 L.Ed. 699]. Diseased cattle ranging between Georgia and Florida are in commerce, Thornton v. United States, 271 U.S. 414, 425 [46 S.Ct. 585, 70 L.Ed. 1013]; and the transmission of an electrical impulse over a telegraph line between Alabama and Florida is intercourse and subject to paramount federal regulation, Pensacola Telegraph Co. v. Western Union Telegraph Co., 96 U.S. 1, 11 [24 L.Ed. 708]. Not only, then, may transactions be commerce though non-commercial; they may be commerce though illegal and sporadic, and though they do not

utilize common carriers or concern the flow of anything more tangible than electrons and information." United States v. South-Eastern Underwriters Ass'n., 322 U.S. 533, 549–550, 64 S.Ct. 1162, 1172, 88 L.Ed. 1440, (1944).

■ Survey has performed work in other states. Such work required the transportation of persons and equipment across state boundaries. When completed Survey's work product (in this case, information in the nature of a plat) was delivered across state lines. Furthermore, Survey was employed by firms directly engaged in interstate commerce, apparently for purposes related to interstate commerce. Finally, Survey was employed by a local governmental body financed by federal funds and engaged in activities encouraged and sponsored by national policy. Survey's activities involve trade, traffic and communication and affect commerce; and the fact that its activities may not have a substantial impact on commerce does not foreclose Board jurisdiction.

■ We hold that the Board did not err in assuming jurisdiction in this case.

Survey complains strongly that the union was certified after an *ex parte* administrative investigation, which resulted in overruling one of Survey's objections to the vote challenges and Survey's electioneering objection to the conduct of the election.

Specifically, with respect to the regional director's investigation and decision on the vote challenges, Survey complains that it had no knowledge of the information relied upon by the regional director; that its request to be supplied with copies of all affidavits upon which the regional director intended to rely was denied, with the exception of Raimondi's affidavit, which was supplied only after the regional director made his determination. Survey states that it was not permitted to be present when Raimondi's affidavit was taken. Further, Survey claims that the failure to accord it a hearing prevented it from conducting a complete investigation of the facts, for it would have risked charges of unfair labor practices by questioning its employees outside of a hearing.

Survey also complains about the failure to provide a hearing on the electioneering issue on the ground that, absent a hearing, it had no method for ascertaining the facts and could not even make an offer of proof without such an opportunity.

While the issues raised here are relatively simple, their resolution requires more than cursory consideration because of their importance to the parties involved. They involve Board procedures and uncertainties in the law.

■ If, in a hearing on an unfair labor practice charge, the respondent, in defending itself, offers evidence relating to the correctness of the Board's certification of a union following an election, the trial examiner, following established Board procedures, may exclude such evidence. He does so on the ground that the issues to which the evidence relates have been decided in the representation proceeding. If, however, the evidence is new evidence or, presumably, if the evidence were unavailable at the time of the representation proceeding, it would probably be admitted.

■ The effect of this procedure in this and similar cases is to make the Board's determinations at the representation stage of litigation conclusive at the unfair labor practice stage. In other words, if the respondent, who has refused to bargain with a certified union on the ground of irregularity in the election, is unable to present new evidence at the unfair labor practice stage, he will be guilty of the unfair labor practice of refusing to bargain.

■ In the instant case, this procedure has been combined with a practice of *ex parte* investigation and a determination of election issues without a hearing. Under Board rules, it was not necessary to provide a hearing on election issues because it was found that Survey

had not raised substantial and material issues of fact.[2]

Survey relies principally on the following cases in support of its position that it is entitled to a hearing. N. L. R. B. v. Joclin Mfg. Co., 2 Cir., 314 F.2d 627 (1963); N. L. R. B. v. Lord Baltimore Press, Inc., 4 Cir., 300 F.2d 671 (1962); N. L. R. B. v. Poinsett Lumber & Mfg. Co., 4 Cir., 221 F.2d 121 (1955); N. L. R. B. v. West Texas Utilities, 5 Cir., 214 F.2d 732 (1954); N. L. R. B. v. Sidran, 5 Cir., 181 F.2d 671 (1950).

These cases are roughly similar in general facts. That is, the respondent was denied an opportunity for a hearing on a refusal to bargain charge following respondent's failure to deal with a union which the Board had certified, but which the company did not believe to be properly certified.

In *Joclin, West Texas Utilities, Baltimore Press* and *Poinsett Lumber,* the courts found that the respondent raised substantial and material issues of fact which, by the Board's own rules and regulations, required the hearing that had been denied.

In a case not cited by Survey, N. L. R. B. v. J. R. Simplot Company, 9 Cir., 322 F.2d 170 (1963), the court said, regarding the exceptions the respondent filed to the report of the regional director:

"These exceptions do not directly meet or mention any of the facts found by the Regional Director and raise no factual issues whatsoever. They do not suggest what new facts a hearing would develop or what if any evidence would be produced. They simply question the ultimate interpretation placed by the Director upon certain conduct. A hearing apparently would not deal with matters of factual proof but would serve only to permit argument which could as well have been presented in the writing itself.

"Under these circumstances it was not abuse of discretion for the Board to proceed without hearing." Id. at 172.

In N. L. R. B. v. O. K. Van Storage, Inc., 5 Cir., 297 F.2d 74, 76 (1961), the court, noting that the Act did not require a hearing on objections to an election, said:

"The Board nonetheless makes it a practice to hold post-election hearings on objections to elections, but in keeping with the spirit of the Act does so only when it appears that the allegations relied on to overturn the election have a basis in law and that there is evidence to support them. The opportunity for protracted delay of certification of the results of representation elections which would exist in the absence of reasonable conditions to the allowance of a hearing on objections is apparent. An objecting party who fails to satisfy such conditions has no cause for complaint when and if his demand for a hearing is denied."

The case most favorable to Survey's position with respect to a hearing is National Labor Relations Board v. Sidran, supra. There, where the question was the absence of a hearing where there were "strongly contested issues of voting eligibility", the court said regarding the report of the Regional Director:

"The report was admittedly based upon an undisclosed *ex parte* investigation, and no hearing was ever held to support it. Respondent had no opportunity to be heard, to examine and cross-examine witnesses, or to produce any evidence in his own behalf which might have tended to impeach or contradict the facts found by the Regional Director as to the status of these challenged employees. Manifestly, the Board's action in considering such report was not within its discretionary power, but under the circumstances arbitrarily deprived respondent of a fair trial." Id. 181 F.2d at 673.

Not specifically in issue in *Sidran,* and not mentioned by the court, was Board procedure of granting a hearing only up-

2. 29 C.F.R. 102.69(c).

on a showing of substantial and material issues of fact.

The conclusion to be drawn from the examination of these cases is that the weight of the law approves the Board procedures, rules and regulations, which were followed in the instant case. It was not improper for the Board to deny a hearing on Survey's election objections on the ground that Survey had not raised substantial and material issues of fact.

We are faced with a more fundamental question, however, for Survey has in effect claimed that, because of law and Board procedures, it has no way of obtaining evidence. It is thus apparently placed in the prejudicial position from which, through no fault of its own, it cannot challenge the election on factual grounds.

Survey states that it has no right of discovery, that it has no knowledge of the witnesses upon whom the regional director relied in overruling its objections, that it could not question its employees without risking charges of unfair labor practices, and that it had been placed in a situation from which it could not conduct a complete investigation.

The fact that Survey lacks a right to discovery does not prevent it from uncovering evidence. It may of course, make it more difficult to obtain evidence.

While it may be that Survey has no actual knowledge of the witnesses upon whose statements the regional director relied, there were clearly a number of individuals who were quite likely to have been interviewed as prospective witnesses and there were plainly a number of leads which could have been investigated.

The matter of employer interrogation of employees for the purpose of uncovering evidence given by employees to the Board, or its agents, is an area of the law in which the rights of parties must be carefully and delicately balanced.[3]

Statements made during an investigation by employees to Board agents may and often do reveal an employee's and his co-workers' attitudes and activities in relation to a union and their employer. If an employee knows that statements made by him will be revealed to an employer, he is less likely, for fear of reprisal, to make an uninhibited and non-evasive statement, a circumstance complicating a determination of the actual facts in a labor dispute. Cf. N. L. R. B. v. Winn-Dixie Stores, Inc., 6 Cir., 341 F.2d 750 (1965); Suprenant Manufacturing Company v. N. L. R. B., 6 Cir., 341 F.2d 756 (1965); Texas Industries, Inc. v. N. L. R. B., 5 Cir., 336 F.2d 128 (1964); Winn-Dixie Stores, Inc., 143 N.L.R.B. 848 (1963).

There is, therefore, strong reason to maintain the confidentiality of employee statements and good reason for the Board's policy of not disclosing such statements to employers.

An employer, on the other hand, should not be required to bargain with a union which is not a legal bargaining agent.

While it is necessary to ensure employee willingness to give information and to protect employees from possible adverse consequences, there is no need to prohibit an employee's voluntary disclosure to an employer. When an employee is not threatened or intimidated in any manner, there is no reason why an employer may not ask an employee to reveal the substance of his statement or testimony.

It has been held that, in preparing for an unfair labor practice case, an employer may question employees, provided his questions are relevant to the issues and are likely to yield substantial evidence. N. L. R. B. v. Winn-Dixie Stores, Inc., supra; Suprenant Manufacturing Company v. N. L. R. B., supra; Texas Industries, Inc. v. N. L. R. B., supra; National Labor Relations Board v. Katz Drug Co., 8 Cir., 207 F.2d 168 (1953); Joy Silk Mills v. National Labor Relations Board, 87 U.S. App.D.C. 360, 185 F.2d 732 (1950), cert. den., 341 U.S. 914, 71 S.Ct. 734, 95 L.Ed. 1350 (1951).

3. See Orlove, Risks to an Attorney in Preparation of a Board Case, XLVII Chicago Bar Record 178 (1966).

In May Department Stores Co., 70 N.L.R.B. 94, 95 (1946), the Board itself held that:

"* * * an employer is privileged to interview employees for the purpose of discovering facts within the limits of the issue raised by a complaint, where the employer, or its counsel, does so for the purpose of preparing its case for trial and does not go beyond the necessities of such preparation to pry into matters of union membership, to discuss the nature or extent of union activity, to dissuade employees from joining or remaining members of a union, or otherwise to interfere with the statutory right to self-organization."

Upholding this standard, the court in *Joy Silk Mills*, supra, said:

"Apparently this rule means that an employer may question his employees in preparation for a hearing but is restricted to questions relevant to the charges of unfair labor practice and of sufficient probative value to justify the risk of intimidation which interrogation as to union matters necessarily entails * * *." Id., 185 F.2d at 743.

While it is clear that an employer may interrogate employees on relevant issues in preparation for defense of unfair labor practice charges, provided he does not thereby invade employee rights, there is uncertainty in the law as to whether an employer may make such interrogations when he is merely contesting a representation election.

In *Texas Industries*, supra, the court said, 336 F.2d at page 133:

"Any interrogation by the employer relating to union matters presents an ever present danger of coercing employees in violation of their § 7 rights. On the other hand, fairness to the employer dictates that he be given a reasonable opportunity to prepare his defense. Accommodation of these interests requires that the scope and manner of permissible questioning be strictly confined to the necessities of trial preparation."

In *Katz Drug*, supra, 207 F.2d at 171–172, the court made the following relevant statement:

"It cannot therefore be said * * * that any inquiry whatever by an employer of an employee as to his or her union membership is 'unlawful per se,' as constituting an intrusion 'into an area guaranteed by the Act as the exclusive concern of employees,' and so attempting to violate an absolute privilege of the employees. No such privilege exists in relation to judicial proceedings, and any legally proper evidential interrogation, as a matter of competent affidavit, deposition or witness-chair testimony, within the issues of the case and wholly for purposes thereof, cannot be held to be an unfair labor practice under the Act, no matter what its incidental consequences, if any, may chance to be. * * * Of course, no litigant has the right to abuse legal situation and judicial process. An employer or its counsel cannot therefore undertake to use a judicial proceeding and its incidents as a weapon or as a shield for saying and doing things not reasonably necessary to the effecting of proper disposition of the justiciable controversy involved, measured by the test of fitting sense of suitor and counsel responsibility in the immediate situation."

While neither of these statements were directed to employer interrogations in preparation for a contest of a representation election, they do disclose that employer interrogation is not unlawful *per se*. We see no reason for not extending this rule to representation proceedings.

Notwithstanding the fact that in the ultimate posture of this case before the Board, Survey was defending itself against an unfair labor practice charge, Survey's only defense was its *contest* of the representation election. Because the union had Board certification, the election is considered to be prima facie valid and must be shown to be invalid. Consequently, although Survey was defending

itself, it had the burden of showing the impropriety of the election.

It is significant that, even when presenting its case to the trial examiner by way of answer to an unfair labor practice complaint, and when requesting opportunity for oral argument before the trial examiner, Survey did not make any factual allegations controverting facts upon which the regional director and the Board based their decisions. Here it is merely alleged that its good faith efforts were frustrated.

■ In this case, the regional director's finding on the challenge to Raimondi's ballot was based on a summary of Raimondi's actual duties, a matter which was wholly within the knowledge of Survey. In such circumstances and under approved Board rules, the action of the Board was proper and Survey was not denied due process through denial of a hearing on Raimondi's status.

In its original objections to the conduct of the election, Survey alleged the presence of two union agents in the vicinity of the poll. It further stated that the union agents:

"\* \* \* were observed in conversation with Tony Costanzo and John Morgan and were introduced to Nick Raimondi and Robert Stevens as representatives of Petitioner at the time and place just mentioned. *It is apparent* that the Petitioner was electioneering \* \* \*." [Emphasis added.]

The regional director overruled this objection, not on the ground that an investigation had revealed different facts, but for reason that:

"It has neither been alleged, nor has investigation found, that any remarks were made of such coercive nature as to exceed the limits of unobjectionable pre-election campaigning. \* \* \*

"\* \* \* the Board has held that the mere presence of a union representative at or near the polling place is not sufficient basis for setting aside the election, nor is the fact that said representatives conversed with the voters at or near the polling place, absent any evidence of coercive statements, the basis for setting aside an election."

This case turns upon whether a party's self-serving allegations and speculations concerning its inability to obtain evidence are sufficient to require a trial-type hearing in order to be insured that fundamental fairness which is the essence of due process.

■ In the absence of some showing of reasonable effort and failure to obtain evidence, or a convincing demonstration that such efforts would necessarily involve risk of illegal action or inequitable or insuperable difficulty, we hold that, under the facts in this case, the failure to provide a hearing on allegations which do not raise substantial and material issues of fact was not fundamentally unfair. Cf. Rockwell Manufacturing Co., Kearney Div. v. N. L. R. B., 7 Cir., 330 F.2d 795 (1964).

For the foregoing reasons, the Board's petition for enforcement of its order to bargain will be enforced.

Order enforced.