**W. T. GRANT COMPANY, Petitioner,**

v.

**NATIONAL LABOR RELATIONS BOARD, Respondent.**

**No. 14385.**

United States Court of Appeals Seventh Circuit.

Sept. 25, 1964.

Prentice H. Marshall, Chicago, Ill., A. V. Federle, Jr., New York City, Raymond, Mayer, Jenner & Block, Chicago, Ill., of counsel, for petitioner.

Marcel Mallet-Prevost, Asst. Gen. Counsel, Elliott Moore, Atty., Arnold Ordman, Gen. Counsel, Dominick L. Manoli, Associate Gen. Counsel, Leonard M. Wagman, Atty., N. L. R. B., Washington, D. C., for respondent.

Before DUFFY, SCHNACKENBERG and KILEY, Circuit Judges.

DUFFY, Circuit Judge.

W. T. Grant Company (Grant) seeks review of a decision and order of the Labor Board finding that Grant violated Sections 8(a) (1) and (3) of the Labor Management Relations Act (Act) in discriminatorily discharging employee Ruth Gullo. The order also directed Grant to cease and desist from discouraging its employees' activities on behalf of, or membership in, Retail Clerks Union Local No. 1116, AFL-CIO, and from requesting its employees to furnish Grant copies of the affidavits given by employees to the Board. The Board has filed a cross petition for enforcement of its order.[1]

The operations of Grant are nationwide. It operates more than one thousand retail department stores in forty-six states. On August 9, 1962, Grant opened a new store in Superior, Wisconsin. Mr. Dell Nelson, a Grant employee of seven and a half years, was appointed Manager of the store. Mr. Raymond Ostertag was employed as Assistant Manager. Thirty-two additional employees were hired.

During July 1962, and prior to the opening of the store, Mrs. Ruth Gullo was interviewed and employed by Grant. She was engaged in stocking shelves and was paid $1.05 per hour. When the store opened on August 9, she became Manager of the Domestic and Yard Goods Departments, and was paid $1.15 per hour. There were no other employees in her departments. In one of these departments she sold yard goods, advising on fabrics and patterns, and many of her customers were those she had served during her previous employment.

Mrs. Gullo had fifteen years' experience as a saleswoman. She had worked in that capacity in the Stack store in Su-

---

1. The Board's decision and order are reported at 144 N.L.R.B. No. 109.

perior. It was, at that time, that she became a member of Local 1116, Retail Clerks Union. The Stack store closed and Mrs. Gullo was unemployed. She then withdrew from active membership in the Union. After being employed by Grant, she again became an active member of the Union.

Grant knew of Mrs. Gullo's affiliation with the Union when she was hired. There is not, in this case, any previous history of anti-union bias on the part of Grant.

Shortly after the store opened, Nelson was told by an employee that representatives of the Union were talking to employees. Nelson ordered that the Union representatives should be barred from the store whenever they appeared.

On Thursday, September 27, after work, Mrs. Gullo met with representatives of the Union. They asked her to talk to the employees of Grant upon behalf of the Union, and she agreed to do so. On the following day, she spoke to a group of employees in the kitchen, and to others during working hours. She did, in fact, on Thursday and Friday, talk upon behalf of the Union to all of the employees of the store, except the girls in the office.

At the end of the second day of her campaign upon behalf of the Union, Nelson notified her that she was fired because of the manner in which she kept her stock book and because she was not a good saleswoman.

Nelson denied he had any knowledge of Mrs. Gullo's union activities. However, the hearing examiner disregarded that testimony because of the open nature of Mrs. Gullo's solicitation of nearly every employee in the store, and all within a period of two days.

The Board found that the precipitate discharge of an experienced employee in the midst of her campaign to organize the employees of the store, was discriminatorily motivated. Grant argues it had good cause for discharging her. The pertinent question then is—What, in fact, motived the discharge? National Labor Relations Board v. Marsh Supermarkets, Inc., 7 Cir., 327 F.2d 109.

There can be no doubt that store manager Nelson was greatly concerned with activities on behalf of the Union. Mrs. Gullo was the only employee engaged in union activities between September 27 and 29. On the latter day, the Company showed the employees a film setting forth its employment benefits, in spite of the fact that this film had previously been shown to the same employees.

Previous to September 29, neither Manager Nelson nor his assistant had ever warned Mrs. Gullo of any danger of discharge because of defects in her work.

■ There is no doubt Mrs. Gullo had some difficulties with her stock records and her checking list book. However, there was evidence that Mrs. Gullo misunderstood the instructions given to her, and she claimed this was due to the fact that she received conflicting instructions from Nelson and Ostertag. Of course, the issue of credibility is a matter for resolution by the Board. Revere Copper and Brass, Inc. v. National Labor Relations Board, 7 Cir., 324 F.2d 132, 135.

■ We hold that there was substantial evidence on the record, considered as a whole, to support the Board's finding that Grant discharged Mrs. Gullo because of her union activities and thus violated Section 8(a) (3) and (1) of the Act. That part of the Board's order with reference to the reinstatement of Mrs. Gullo will be enforced.

That part of the Board's order directing Grant to cease and desist from discouraging its employees' activities on behalf of, or membership in, Retail Clerks Union, Local 1116, AFL-CIO, will likewise be enforced.

### EMPLOYEES' AFFIDAVITS

After Local No. 1116 had filed the unfair labor charge with the Board, Mr. Bennett, who was trial counsel before the trial examiner, went to Superior to interview employees. In Mr. Nelson's office he questioned seven of the saleswomen and obtained an affidavit from each of them.

On November 30, 1962, after learning that the Board would issue a complaint, Grant's counsel, Mr. Federle, wrote to Nelson saying he would like to obtain copies of the employees' affidavits.

Mr. Federle went to extreme care to outline, in great detail, the procedure to be followed by Nelson. The employee was to be informed that she was not required to give Nelson a copy. If the employee was willing to supply a copy, she was requested to mail same directly to the Company's attorney, and that Nelson would not, in any way examine the statement. When Nelson approached the employees, he had Federle's letter with him and either read or showed the letter to each employee interviewed.

The procedure outlined by Mr. Federle, and carried out by Mr. Nelson, had been approved less than three months previous thereto by the Board in Atlantic & Pacific Tea Co. et al., 138 N.L.R.B. 325 (1962). Mr. Federle used that decision as a guide. As late as January 27, 1964, the Board cited, with approval, its procedure in the A. & P. case. See Hyde's Supermarket, 145 N.L.R.B. No. 122.

It is apparent that no coercion was involved or resulted from the request for copies of the affidavits. Two of the ladies from whom such request was made, were called as witnesses by the Board and their testimony discloses that Nelson left it entirely up to them as to whether they would obtain copies of the affidavits.

The Board argues that statements obtained might contain irrelevant and immaterial information. This might be true in some cases, but here, the affidavits were obtained by Mr. Bennett, the Board's trial attorney, in respect to a specific charge that Mrs. Gullo had been discharged for union activities. If Mr. Bennett's inquiry went beyond the scope of materiality and relevancy, Grant should not be penalized.

█ Where the Board based its decision that Grant violated Section 8(a) (1) of the Act by requesting copies of employees' affidavits, and where the employees were, in fact, not coerced, and it was entirely a voluntary matter with them, and where Grant was following a procedure approved three months previously by the Board, we hold there is no justification in this record for the Board's finding that such conduct by Grant is an unfair labor practice and constituted a violation of Section 8(a) (1) of the Act.

Our attention has been invited to a recent decision of the Fifth Circuit—Texas Industries, Inc. et al. v. National Labor Relations Board, 5 Cir., 336 F.2d 128. The Court there pointed out that the questions asked of employees were indiscriminate inquiries which exceeded the necessities of the situation. The Court said that answers to such questions could well have revealed union membership and union activities which had no bearing on the case. There was no element of counsel, in good faith, following the ground rules laid down by the Board. Under such circumstances, the Texas Industries case should be distinguished from the case at bar.

That part of the Board's order based upon the request for copies of employees' affidavits, will not be enforced.

The order of the Board under consideration is enforced in part and enforcement is denied in part.

SCHNACKENBERG, Circuit Judge (concurring in part and dissenting in part).

I concur with Judge Duffy that that part of the Board's order based upon Grant's request for copies of employees' affidavits should not be enforced.

However, on the record before us, I dissent from the court's finding that there was substantial evidence to support the Board's finding that Mrs. Gullo was discharged because of her union activities, in violation of § 8(a) (1) and (3) of the Act.

In explanation of my dissent, I point out that the mere fact that an employee is engaged in union activity does not render invalid a just cause for discharge. Miller Electric Manufacturing Co. v. N. L. R. B., 7 Cir., 265 F.2d 225 (1959). To the same effect is Portable Electric Tools,

Inc. v. N. L. R. B., 7 Cir., 309 F.2d 423 (1962).

The burden was on the Board to prove affirmatively, by substantial evidence, that Mrs. Gullo's discharge was due to union activities. Indiana Metal Products Corp. v. N. L. R. B., 7 Cir., 202 F.2d 613, 616 (1953).

As Judge Duffy points out, there is here no previous history of anti union bias on the part of Grant. We said in N. L. R. B. v. Kaye, 7 Cir., 272 F.2d 112, 114 (1959):

> " * * * In this connection, it is pertinent to note that there is no proof of any anti-union bias or activity on the part of respondent. It has been held, and we think properly, that inferences contrary to direct testimony are not ordinarily sufficient to support a finding. See N. L. R. B. v. Fox Mfg. Co., 5 Cir., 238 F.2d 211, 214, and cases therein cited and discussed. See aso N. L. R. B. v. Pittsburgh Steamship Co., 340 U.S. 498, 502, 71 S.Ct. 453, 95 L.Ed. 479. Moreover, it seems unreal to attribute to respondent a discriminatory and therefore unlawful motive in the discharge of Hentz when a non-discriminatory and therefore lawful reason existed. See Miller Electric Mfg. Co. v. N. L. R. B., 7 Cir., 265 F.2d 225, 226. The indulgence of such an assumption casts a serious reflection not only upon the intelligence of respondent's managing official but upon his common sense. This there is no occasion to do."

The inference that Mrs. Gullo was discharged because of anti union activity is also negatived by the fact that she testified that she had specific difficulties in the performance of her job, that a couple were quite blatant, one of them was in keeping up the book in which she was supposed to mark what was in stock and what was ordered and other information. When she was discharged by store manager Nelson, he told her that he did so because he was not satisfied with her work. He specifically mentioned, *inter alia,* the upkeep of her checking list book.

Nelson testified that he did not know of her union activities when he discharged her and there is no direct evidence which contradicts him. We have said that inference piled on inference is not a substitute for evidence. Indiana Metal Products Corp. v. N. L. R. B., supra, 202 F.2d 616. The fact that Mrs. Gullo "was subject to discharge for legal cause and the fact that" she "was engaged in union activity was a coincidence which did not render the just cause invalid." Miller Electric Manufacturing Co. v. N. L. R. B., supra.