**ROBERTSHAW CONTROLS COMPANY, LUX TIME DIVISION, Petitioner,**

v.

**NATIONAL LABOR RELATIONS BOARD, Respondent.**

No. 72–1518.

United States Court of Appeals, Fourth Circuit.

Argued Dec. 6, 1972.

Decided Aug. 30, 1973.

---

Paul M. Thompson, Richmond, Va. (Francis V. Lowden, Jr., Hill B. Wellford, Jr., and Hunton, Williams, Gay & Gibson, Richmond, Va., on brief), for petitioner.

Bruce McLean, Atty., N. L. R. Bd. (Peter G. Nash, Gen. Counsel, Patrick Hardin, Assoc. Gen. Counsel, Marcel Mallet-Prevost, Asst. Gen. Counsel, Robert A. Giannasi, N. L. R. Bd., on brief), for respondent.

Before BOREMAN, Senior Circuit Judge, and RUSSELL and FIELD, Circuit Judges.

BOREMAN, Senior Circuit Judge:

Robertshaw Controls Company, Lux Time Division, (Company) petitions this court pursuant to Section 10(f) of the National Labor Relations Act [1] to review and set aside an order of the National Labor Relations Board (Board) based on a finding that the Company had violated Sections 8(a)(1) and (3) of the Nation-

1. 29 U.S.C. § 100(f).

al Labor Relations Act [2] in orally reprimanding certain employees, and noting their reprimand in the personnel files, for union related activities and in asking other employees for copies of statements given to Board agents who were investigating unfair labor practice charges filed against the Company. The Board cross-petitions for enforcement of its order.

The Company urges two points of error: (1) that the General Counsel failed to carry his burden to prove by substantial evidence that the oral reprimands given to certain employees were motivated by anti-union considerations; and (2) that the Board erred in holding that the mere request by an employer for statements given by his employees to a Board agent violates Section 8(a)(1) of the Act without proof of actual coercion.

The Company operates a plant in Lebanon, Tennessee, where it manufactures clocks and controls for timing devices. In the latter part of 1970, the International Association of Machinists and Aerospace Workers (Union) began an organizational campaign at the plant. At that time the Company retained legal counsel to advise it as to the proper course of conduct for its supervisory personnel during the course of the campaign. The Company rule on solicitation, posted on bulletin boards throughout the plant, was as follows:

"No solicitation during working hours. During breaks and lunch hours, the rule does not apply."

During February of 1971 [3] the Company began to receive complaints from some of the employees that they were being harassed by pro-union employees with regard to the Union organizational efforts. The credited testimony disclosed the following events. During the lunch break on February 17, Pearl Carter, Betty Hasty and Bettie Pleasant approached Cornelia Starks at her usual work position to inquire whether she supported the Union. Pleasant, Starks' sister, asked her if she were ready to sign a Union authorization card, to which Starks responded that she was not, citing the fact that her husband had recently been discharged from employment at his plant and his union had done nothing to help him. Carter interjected that it was her understanding that the discharge of Starks' husband had not been the union's fault. Starks remained unconvinced and insisted that she did not want to be bothered with the Union. Pleasant then said: "Well, let's go, you all. We can't talk no sense into this stupid idiot's head." The group then disbanded and returned to work.

Later, Starks reported the incident to her supervisor, asking that Carter, Hasty and Pleasant be stopped from "calling [her] names and humiliating [her] and aggravating [her] and disturbing [her] to the point where she couldn't do half [her] work. . . ." She was subsequently referred to Weatherly, the personnel manager of the plant, who promised that he would look into the matter, cautioning her not to fulfill her prediction that she "would probably hit somebody" if the harassment continued, because such conduct would result in disciplinary action being taken against her.

The following day, February 18, Weatherly again received a complaint against Carter. This time it was registered by employee Sylvia Robinson who complained that Carter bothered her constantly and would not heed requests to stop. She demanded that Weatherly put a stop to the constant solicitation by Carter. Robinson did not testify so the

2. 29 U.S.C. § 158:
  "(a) It shall be unfair labor practice for an employer—
    (1) to interfere with, restrain, or coerce employees in the exercise of the rights guaranteed in section 157 of this title;
    .     .     .     .     .

    (3) by discrimination in regard to hire or tenure of employment or any term or condition of employment to encourage or discourage membership in any labor organization: . . . ."

3. All dates hereinafter mentioned are in 1971.

testimony of Carter is uncontradicted to the effect that her solicitation of Robinson in behalf of the Union was not coercive and occurred at the plant during non-working hours and at Robinson's home.

Weatherly had also received complaints from employees James Fox, Phillip Davis, Larry Craddock and William Breedlove that employee Terry Mofield was harassing them during working time to join the Union. All, save Fox, uttered threats against Mofield to Weatherly. These reports led to an oral reprimand of Mofield. The Board found that the reprimand was not an unfair labor practice since it was not prompted by anti-union animus and there is no challenge here to that determination.[4]

As a result of the complaints, individual disciplinary sessions were held on February 19 with the employees against whom complaints had been lodged. Weatherly gave each an oral reprimand in the presence of her supervisor and entered a written notation of the reprimand in each employee's personnel file. At no time prior to the sessions did Weatherly or any other member of the supervisory staff of the Company investigate the disciplined employees' version of the incidents which were the subjects of the complaints.

Organizational activities are protected under Section 7 of the Act[5] when carried out in an orderly manner which produces a minimum of interference with normal work patterns. Although some leeway must be given for impulsive behavior an employer may discipline his employees for "flagrant conduct" even though occurring in the course of organizational activities protected by the Act. N.L.R.B. v. Thor Power Tool Co., 351 F.2d 584, 587 (7

Cir. 1965). The Company argues that the harassments complained of by Starks and Robinson justify the reprimands as a normal incident of an employer's right to maintain order in his operations. The trial examiner found that no harassment occurred with respect to either Starks or Robinson and his finding was accepted by the Board. We note that Carter's testimony that her solicitation of Robinson was not coercive and was in response to Robinson's expression of interest is not contradicted. The Board specifically found that Starks' reaction was not the result of harassment but was an exaggeration brought on by personal difficulties and that conclusion is amply supported by the record. The Board was persuaded by these considerations to accept the conclusions of the trial examiner who observed as follows:

"I am unable to find that the record preponderates in favor of a finding that Carter had, in fact, engaged in harassment of Robinson . . . . [T]he record fails to preponderate in favor of a finding that not only Pleasant but also Carter and Hasty had harassed Starks . . . ."

We conclude that the Board's findings that neither Starks nor Robinson was harassed are supported by substantial evidence. Hosiery Corporation of America v. N.L.R.B., 422 F.2d 784, 786 (4 Cir. 1970).

The Board further concluded that *since no harassment had occurred* the reprimands stemming from the incidents related above violated Section 8(a)(1) and (3) of the Act. The Board found that the Company's failure to get both sides of the story before issuing reprimands, and the warnings to Pleasant, Carter and Hasty not to use force when,

---

4. However, in requesting copies of the statements given to Board agents by those who complained about Mofield's conduct the Company was charged with violations of Section 8(a)(1), just as it was in connection with requests for the statements of Starks and Robinson as discussed *infra*.

5. 29 U.S.C. § 157:
    "Employees shall have the right to self-organization, to form, join, or assist labor organizations, to bargain . . . and to engage in other concerted activities for the purpose of collective bargaining or other mutual aid or protection . . . ."

in fact, such threats had been voiced only by Starks, indicated an anti-union animus. The Board also found that the absence of any assurance that protected organizational activity would be respected combined with vague reprimands for "harassment" would deter the employees in the exercise of their rights under the Act. The trial examiner's conclusion which was adopted by the Board states:

"In all these circumstances, I infer, and find, that the claimed fear of violence if there was a recurrence of the aforesaid episode was merely a pretext to mask Respondent's opposition to any solicitation activity by these employees in the plant in behalf of the Union."

We think there is substantial supporting evidence on the record as a whole and we therefore grant enforcement of that portion of the Board's order dealing with the reprimands of Carter, Pleasant and Hasty. N.L.R.B. v. Link-Belt Co., 311 U.S. 584, 61 S.Ct. 358, 85 L.Ed. 368 (1941).

■ Following the reprimands of February 19, the Board investigated the charges of violations of Section 8(a)(1) and (3) filed as a result of the repri-

mands. On March 17, the Board interviewed and took statements from those employees who were disciplined and, at the request of the employer, from those employees complaining of harassment by pro-union employees. Subsequently, a complaint was issued against the Company.

Prior to the hearing on the complaint and in preparation of its defense to the charges the Company sought to obtain copies of the statements given to the Board by Fox, Davis, Craddock, Robinson and Starks, those employees on whose complaints the Company had acted in giving the reprimands. Counsel for the Company prepared a talk [6] that was to be given orally to the five employees last named above. He also drafted a form letter, addressed to the Board's representative, to be presented to each of the five employees for consideration and signature, should the employee desire to assist the Company.[7] The General Counsel stipulated that the representations in the form letters were true, i. e., that the cooperation of the employees was entirely voluntary and that it had been explained to them that they would not be punished for refusal nor rewarded for agreement to sign the

6. "We have learned that you gave a statement to the NLRB concerning certain unfair labor practice charges that have been filed against the Company. We feel that it would be helpful to us in preparing for a hearing on these charges if we could review a copy of your statement prior to the hearing. For this reason, we are asking you to send a letter to the Board requesting a copy of your statement for us to review.

"This is a request. It is not a demand. You may refuse to do this without fear of any adverse action by the Company as a result of your refusal. You will not be discharged or disciplined. Nor will your employment be affected in any other way. Neither will you be rewarded if you agree to this request. You are perfectly free to agree to this or refuse to agree, whichever you may see fit to do."

The Board found that the talk was either not given in its entirety to the employee or not given at all in the case of some. We conclude, however, that the recital of a proposed talk to the five employees is not crucial in determining whether the request for

statements constituted a Section 8(a)(1) violation.

7. Dear Mr. Reynolds:

My employer has requested me to ask the Board for a copy of the statement I gave to a representative of the Board concerning the above case. I have voluntarily agreed to do as requested and I would like you to send me a copy of my statement which I plan to turn over to my employer. Please send my statement to me at (insert the correct address).

My employer has explained to me that the statement may be helpful to the Company in preparing for the hearing in this case. My employer has also explained to me that I am under no obligation to make this request, that it is entirely voluntary on my part, and that my employment will not be adversely affected in any way if I refuse. I also understand that I will not be rewarded in any way because I have agreed to do this.

Very truly yours,
(Employee's Name).

letters. Still, the Board ruled that actual coercion need not be proved and that the mere request for a prehearing statement constituted a violation of the Act:

"For, it is the very manifestation by an employer to an employee of an interest in what the latter had to say about him in the statement which constitutes the vice of the situation. . . .

"In view of all the foregoing, and on the entire record in this case, I conclude, and find, that Respondent, by requesting the five employees named above to obtain their pretrial statements from the Board, and by assisting them in doing so, violated Section 8(a)(1) of the Act."

We cannot accept this ruling as applicable or as supported by the record here.

The Board cites a number of cases to sustain its argument that the mere request for pretrial statements violates the Act. An examination reveals particular features of those cases that render them of little or no value in support of the Board's argument.

In N.L.R.B. v. Winn-Dixie Stores, Inc., 341 F.2d 750 (6 Cir. 1965), the court granted enforcement of the Board's order finding the requests for copies of statements to be a violation of Section 8(a)(1). The court also recognized, however, that copies of pretrial statements may be requested lawfully when done in accordance with established Board procedures, citing W. T. Grant Co. v. N.L.R.B., 337 F.2d 447 (7 Cir. 1964). Thus the court recognized that situations may arise in which mere requests are made in such a fashion as to remove the presumption of coercion which might otherwise attach.

Texas Industries, Inc., v. N.L.R.B., 336 F.2d 128 (5 Cir. 1964), also involved the grant of enforcement of an order of the Board based upon a determination that requests for statements violated the Act. Of the 200 employees at the plant, 147 were interviewed and each was asked to supply the employer with a copy of any statement that might have been made to a Board agent. Only four employees agreed, and these four were again extensively interviewed as to the contents of their statements. While acknowledging that a delicate balance must be struck between the legitimate interests of the employer and the right of the employees to be free of undue pressures and coercion the court concluded that, on the facts of the case, the Company had exceeded the scope of investigation necessary to prepare its defense to unfair labor practice charges:

"The question seeking to elicit all information given the NLRB agent, and the *blanket request* for copies of the statements employees had given the Board were *indiscriminate inquiries* which exceeded the necessities of the situation. . . .

· · · · ·

"*It may be that under some circumstances a showing could be made that an employer would be justified in obtaining copies of employees' statements.* We are satisfied that such circumstances are not present here." 336 F.2d 133–134 (emphasis added; footnote omitted).

Therefore, far from supporting the position that the mere request for statements made by employees constitutes a violation of the Act, the Fifth Circuit found a violation only on the facts as proved,[8] and expressly noted that the mere request did not constitute a violation absent evidence of actual coercion or intimidation.

In N.L.R.B. v. Ambox, Inc., 357 F.2d 138 (5 Cir. 1966), both the attorney for

8. In the case at bar, the Company employed approximately 560 people. Only five employees were asked to supply the Company with statements. These were the same five employees who initially complained of union harassment and who were interviewed by the Board at the *request of the employer.* Clearly on the facts, the Company did not engage in blanket requests and indiscriminate inquiries as was the case in *Texas Industries, supra.*

the employer and the president of the Company were guilty of coercive measures in their attempts to obtain copies of statements made to Board investigators. Unlike the assurances given in the present case, the employer had made an express representation of reward for cooperation in supplying a copy of a statement given to a Board agent.

"Counsel's request, however, of two *Board witnesses* for copies of their Board statements, and the employer's solicitation from an employee of a copy of his statement with the promise it would put a feather in his cap violated the Act." 357 F.2d at 141 (emphasis added).

It is significant that the court should refer to the employees as "Board witnesses" rather than merely as "employees." Therefore, in light of the findings of coercive pressure on the employees, who were also Board witnesses,[9] and the promise of reward for cooperation, the *Ambox* case cannot support the theory of the Board in finding a violation of the Act on the facts of the instant case.

Henry I. Siegel Co., Inc., v. N.L.R.B., 328 F.2d 25 (2 Cir. 1964), involved a broad investigation of unfair labor practices at the employer's clothing factories. The employer "requested" copies of the statements made by its employees to investigators for the Board. In granting enforcement of the Board's order finding that the requests violated the Act, the court observed:

"Several employees testified to their apprehension when requested to deliver copies of their statements, to the extent that some of them were induced to destroy their copies or to request the investigator to mail the copy to their home." 328 F.2d at 27.

This is in sharp contrast to the facts of the case before us. Several employees

whose statements were requested were called by the Company to testify. All testified that not only were they willing to aid the Company but were happy to do so.

In N.L.R.B. v. General Stencils, Inc., 438 F.2d 894 (2 Cir. 1971), the court granted enforcement of the Board's order finding a violation of the Act on the basis that the employer had no valid interest in the inquiry into the contents of the pretrial statements given to the Board investigators. Unlike the previously discussed cases there was no evidence of any fear in the employee whose statement had been requested and he "had no qualms in indicating to . . . [the supervisor] that he had told the Board 'the truth.'" For that reason the Second Circuit's holding differed from its earlier position in Henry I. Siegel, *supra*. The court noted:

"We thus might have hesitated in sustaining the Board's finding on this issue were it not that we perceive no legitimate employer interest in the solicitation of such information under the circumstances here presented and an order condemning such questioning without proof of effect is thus justified." 438 F.2d at 898 (footnote omitted).

However, in the case before us, the Company had a valid reason for wanting to discover the contents of the statements given to the Board. Those statements, given by employees whose charges initiated the reprimand procedure, were necessary and helpful to the Company in preparing its defense to the charged violations. *See* Midland Broadcasters, Inc., 176 NLRB 107, 113–114 (1969).

Retail Clerks International Association v. N.L.R.B., 125 U.S.App.D.C. 389, 373 F.2d 655 (1967), is the one case cited by the Board which might seem to provide some support for its position. The evidence there showed that the em-

9. In the case at bar, the witnesses involved were "Company witnesses." They were not called to testify by the General Counsel but rather were called by the Company. They had initially complained of union harassment to the Company, had agreed to help the Company in any way, and testified to facts favorable to the Company's position at the hearing.

ployer exerted extreme pressure on its employees to reveal the contents of their pretrial statements. The employer suspended those who balked at answering, and threatened discharge for continuing refusal. The court recognized that "[t]hough the record would have supported a finding of coercion that would distinguish such cases as W. T. Grant Co. v. N.L.R.B., 337 F.2d 447, 449 (7 Cir. 1964), the Board held that the mere request was a violation of the Act." [10] The court then proceeded to grant enforcement of the Board's order.[11] We think that the ultimate disposition of the case was proper since coercion in connection with the request for statements was clearly established. We conclude that the holding of that case is to be interpreted in light of the facts as set out therein and has no application here. Insofar as *Retail Clerks Int'l Ass'n* may be in conflict with the conclusion which we reach we decline to follow it and are persuaded instead by the reasoning of *Atlantic & Pacific Tea Co.,* 138 NLRB 325 (1962):

> "I can appreciate the General Counsel's concern over the Respondent's tactics in obtaining the affidavits of his witnesses in this manner. Board policy, as embodied in Section 102.118 of the Board's Rules and Regulations, is not to produce any such statements until after the witness has testified. But the issue here is confined to whether or not Respondent's conduct in obtaining copies of these affidavits was in violation of Section 8(a)(1) of the Act. I am constrained to find

that it was not. The evidence shows that Smith but *requested* the employees to obtain copies of their affidavits for the purposes indicated. He did not, as General Counsel alleges, demand that they be produced. In the absence of any threats, harassment, or undue persuasion, I am compelled to find that Smith's conduct in this regard was not in violation of Section 8(a)(1) of the Act." 138 NLRB at 334–335.

The Board adopted the *per se* rule on the theory that a pretrial statement of an employee may well contain information not material to the proceedings brought against an employer, and to which, therefore, he is not entitled. It is argued that if these statements must be made available to the employer simply at his request the ability of the Board to investigate allegations of unfair labor practices would be seriously hampered due to the inhibitory effect on the employees' willingness to talk. *See,* N.L.R.B. v. Winn-Dixie Stores, Inc., 341 F.2d 750, 752–753 (6 Cir. 1965). While this argument may have merit in many situations, such as when an employer goes on a "fishing expedition" for any statements given by his employees in the course of a general investigation we cannot agree that the mere request for copies constitutes a Section 8(a)(1) violation under the facts of this case.

There is no evidence that the five employees were coerced when the requests were made for copies of their statements. The General Counsel *stipulated that the representations of voluntariness*

---

10. Retail Clerks Int'l Ass'n v. N. L. R. B., 125 U.S.App.D.C. 389, 373 F.2d 655, 658 (1967).

11. The court concluded that the limitations on a request for statements did not severely handicap the employer's preparation for a hearing since on demand he would be supplied with a copy of the statements of employees who testify at the hearing. Under the facts of the case at bar it is doubtful that the employer would ever be able to obtain the statements. 29 C.F.R. § 102.-118(b)(1) provides that after a witness called by *General Counsel* or the *charging*

*party* has testified at a hearing the trial examiner must, upon motion of the respondent, order the production of any pretrial statement of that witness. Since the five witnesses whose statements were requested were witnesses for the employer and not for the General Counsel or the charging party, those statements were not required to be released. The Board's interpretation of *Retail Clerks Int'l Ass'n* coupled with 29 C.F.R. 102.118(b)(1) would foreclose the respondent employer from obtaining the statements of a favorable witness who is an employee.

*in the form letters were true.* Those employees called to testify for the Company indicated they were willing and anxious to aid the Company. In addition, it was explicitly revealed in the form letter that the request was made on the Company's behalf. This afforded the Board an opportunity to determine the voluntariness of the employees' participation, to excise portions considered irrelevant or immaterial or refuse to comply with the request. The frankness of the disclosure was a clear indication of the absence of any coercive purpose in requesting the statements.

 The test to be applied with respect to determining coercion is whether the employer engaged in conduct which, it reasonably may be said, tends to interfere with the free exercise of employee rights. N.L.R.B. v. Illinois Tool Works, 153 F.2d 811 (7 Cir. 1946). In the instant case it is to be borne in mind that these proceedings originated as a result of complaints of harassment and interference lodged against certain pro-Union employees by those very employees who requested that they be furnished copies of their statements. It is incredible that these complaining employees would object to the revelation of any information of that nature which might be contained in the statements to the Board investigators. It is further to be noted with emphasis that the investigation in the instant case concerned specific charges, involving only a very small number of employees, and was not a wholesale investigation of alleged anti-Union activities on the part of the Company. Under these particular facts and circumstances we conclude that the employer's request for copies of statements would not deter other employees from giving statements to the Board's agents; it would not, in our opinion, tend to interfere with the free exercise of employee rights. Appropriate here is the language of the court in W. T. Grant Co. v. N.L.R.B., 337 F.2d 447 (7 Cir. 1964):

"The Board argues that statements obtained might contain irrelevant and immaterial information. This might be true in some cases, but here, the affidavits were obtained by Mr. Bennett, the Board's trial attorney, in respect to a specific charge that Mrs. Gullo had been discharged for union activities. If Mr. Bennett's inquiry went beyond the scope of materiality and relevancy, Grant [the company] should not be penalized." 337 F.2d at 449.

It must be noted that we reach the decision in this case upon its particular and somewhat unusual facts. Enforcement of that portion of the Board's order dealing with the requests for copies of the pretrial statements of the employees is denied.

Enforcement granted in part and denied in part.