**NATIONAL LABOR RELATIONS BOARD, Petitioner,**

v.

**W. Carter MAXWELL, dba Pioneer Concrete Co., Respondent.**

**No. 79–7233.**

United States Court of Appeals, Ninth Circuit.

Argued and Submitted July 9, 1980.

Decided Jan. 26, 1981.

Rehearing Denied March 9, 1981.

Lawrence Song, Washington, D. C., for petitioner.

James Thompson, Merrill & Thompson, Santa Rosa, Cal., for respondent.

Before DUNIWAY, TANG and CANBY, Circuit Judges.

CANBY, Circuit Judge:

The National Labor Relations Board petitions for enforcement of its order against an employer, W. Carter Maxwell. The order is based upon findings by the Administrative Law Judge and the Board that Maxwell violated §§ 8(a)(3) and (1) of the National Labor Relations Act by discharging an employee, Cantrell, and violated § 8(a)(1) of the Act by requesting another employee, Bower, to deliver Maxwell a copy of the written statement that Bower had submitted to the Board during its investigation of Cantrell's discharge. Finding the decision of the Administrative Law Judge and the Board supported by substantial evidence, we enforce the order. Because we base our decision entirely on the § 8(a)(1) violations, which are sufficient to support enforcement, we need not reach the § 8(a)(3) issue.

### 1. Factual Background:

Employer Maxwell has been engaged since 1950 as a sole proprietor in the business of producing and selling ready mixed concrete. At the time this case arose he employed five drivers, one of whom was Cantrell. The company was run on an informal basis. The drivers were not required to punch time cards and were paid for 40 hours per week, 52 weeks per year, whether they were working or sick or rained out. All of the drivers averaged less than 40 hours work per week.

Since 1960 Maxwell has had a collective bargaining agreement with Local 980 of the International Brotherhood of Teamsters (the Union). The standard agreement in force at the time in question provided that employees were to be paid time–and–a–half for work in excess of eight hours per day. At Maxwell's plant, however, this provision of the agreement had been wholly ignored ever since it came into force. Instead of paying overtime rates on those few occasions each year when drivers were required to work in excess of eight hours per day, Maxwell gave them compensatory time off on following days. No complaint concerning this practice had ever been made to the Union, even though Union representatives regularly visited Maxwell's plant. It seems clear that all of the drivers except Cantrell were quite content with a compensation system that benefited them more on balance than strict adherence to the collective bargaining agreement would have.

### 2. Cantrell's Discharge:

Cantrell was the only employee who had complained about Maxwell's failure to pay overtime rates and he had done so several times since 1970. On each occasion Maxwell had simply told him to take compensatory time off. On May 4th, 1977, Cantrell worked about an hour overtime and after work went to Maxwell and said he wanted to be paid for the hour at the overtime rate. According to the findings below the meeting was "acrimonious and probably involved some shouting." At the conclusion of the interchange, Cantrell asked Maxwell if he (Cantrell) was fired, and Maxwell answered in the negative and then stated, "I guess we can work out something perhaps under the table." In context, this statement referred to an arrangement regarding overtime.

On the following day, May 5th, Maxwell called Cantrell into the office after work and told him, "There just is no point in trying to continue here, it is not going to work. Why don't you quietly go on and look for another job. I will not do anything to hurt your unemployment pay." Another heated argument followed again probably with some shouting, after which Maxwell handed Cantrell a check representing either accrued pay or severance pay.

Cantrell subsequently filed a charge with the Board based upon his discharge. A complaint issued and the Administrative Law Judge found that Maxwell had violat-

ed §§ 8(a)(3) and (1) of the Act by discharging Cantrell "at least in substantial part" because of his attempt to enforce the overtime provisions of the collective bargaining agreement. The Board relied solely on that determination in upholding the decision of the Administrative Law Judge regarding Cantrell's discharge.

Section 8(a)(1) of the Act, 29 U.S.C. § 158(a)(1), makes it an unfair labor practice for an employer to "interfere with, restrain or coerce employees" in the exercise of their rights to engage in collective bargaining and other concerted activities for the purpose of collective bargaining. Maxwell does not argue that Cantrell's request for overtime pay was not a protected activity. *See NLRB v. Adams Delivery Service, Inc.*, 623 F.2d 96, 100 (9th Cir. 1980). The central question in this case, therefore, is whether Cantrell was fired because of his attempts to be paid overtime as provided in the agreement or for some other reason not protected by the Act. If substantial evidence in the record considered as a whole supports the decision of the Board, we must enforce it. 29 U.S.C. § 160(e); *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 487–88, 71 S.Ct. 456, 463–464, 95 L.Ed. 456 (1951).

Maxwell contends that he fired Cantrell because Cantrell shouted at him and not because of his attempts to enforce the agreement. He points to the fact that Cantrell had complained about overtime previously without retaliation by Maxwell. We find substantial evidence in the record to support a contrary determination. The Administrative Law Judge was justified in concluding from Maxwell's own testimony that he had decided to discharge Cantrell when he called him into the office on May 5 and that the reason for the discharge was Cantrell's insistence upon the overtime arrangement guaranteed by the collective

bargaining agreement. Because Cantrell was fired for trying to enforce the collective bargaining agreement, his discharge violated § 8(a)(1) of the Act.[1]

3. *Maxwell's Request for a Copy of Employee Bower's Statement to the Board:*

After Cantrell filed the unfair labor practice charge with the Board, Maxwell asked Bower, another employee, for a copy of the statement Bower had made to the Board. Maxwell did not advise Bower that no reprisals would be taken against him if he refused to deliver the affidavit. Maxwell made no showing that he needed the statement or any part of it for purposes of trial preparation. Bower agreed to obtain the statement for Maxwell, and Maxwell produced a typed letter of request which Bower signed. A copy of the statement was mailed by the Board to Bower, and he delivered it to Maxwell. The Administrative Law Judge found that Bower could not have refused the request, and concluded that the request therefore violated § 8(a)(1) of the Act. The Board concurred in that finding.

Because there is no suggestion in the record that Bower was unwilling to cooperate with Maxwell, we understand the ruling of the Administrative Law Judge and the Board to be that a request for an employee's statement to the Board is a *per se* violation of § 8(a)(1) in the absence of assurances to the employee that there will be no retaliation for refusal and of a showing by the employer that the statement is needed for the employer's trial preparation. Some courts appear to have adopted such a rule. *NLRB v. Winn–Dixie Stores, Inc.*, 341 F.2d 750 (6th Cir.), *cert. denied*, 382 U.S. 830, 86 S.Ct. 69, 15 L.Ed.2d 74 (1965); *Retail Clerks International Association v. NLRB*, 373 F.2d 655 (D.C.Cir.1967); *NLRB*

---

1. We do not consider whether the Board applied the proper standard to decide whether the discharge violated the Act. Maxwell did not raise this issue before the Board or on appeal to this court. Therefore, under § 10(e) of the Act, 29 U.S.C. § 160(e), and 29 C.F.R. § 102.46, we may not consider the question. *Detroit Edison* *Co. v. NLRB*, 440 U.S. 301, 311 & n.10, 99 S.Ct. 1123, 1129 & n.10, 59 L.Ed.2d 333 (1979); *NLRB v. Seven–Up Bottling Co.*, 344, U.S. 344, 350, 73 S.Ct. 287, 290, 97 L.Ed. 377 (1953); *NLRB v. Don Burgess Construction Corp.*, 596 F.2d 378, 389 (9th Cir.), *cert. denied*, 444 U.S. 940, 100 S.Ct. 293, 62 L.Ed.2d 306 (1979).

*v. General Stencils, Inc.*, 438 F.2d 894 (2d Cir. 1971); *see Texas Industries, Inc. v. NLRB*, 336 F.2d 128, 133 (5th Cir. 1964). Other courts have not endorsed a *per se* rule, but have held that the lawfulness of an employer's request for an employee's statement to the Board depends upon the balancing of circumstances that may suggest coercion against the employer's need for the information. *NLRB v. Martin A. Gleason, Inc.*, 534 F.2d 466 (2d Cir. 1976); *Robertshaw Controls Co., Lux Time Division v. NLRB*, 483 F.2d 762 (4th Cir. 1973). The latter position is analogous to the rule of this circuit that the permissibility of interrogation of employees about union activities depends upon whether the totality of the circumstances indicates restraint or coercion of employees in the exercise of their § 7 rights. *Penasquitos Village, Inc. v. NLRB*, 565 F.2d 1074, 1080 (9th Cir. 1977); *NLRB v. Silver Spur Casino*, 623 F.2d 571, 584–85 (9th Cir. 1980); *but see NLRB v. Port Vancouver Plywood Co.*, 604 F.2d 596, 599 n.1 (9th Cir. 1979), *cert. denied*, 445 U.S. 915, 100 S.Ct. 1275, 63 L.Ed.2d 599 (1980). This circuit has not, however, ruled on the issue now presented.

■ Faced with an open question we adopt the rule that an employer violates § 8(a)(1) *per se* by requesting an employee's statement to the Board without assuring the employee that no reprisals will follow from refusal, and without showing that the requested statement is needed for trial preparation and that the request does not go beyond those needs. We believe that any less stringent rule presents too great a risk of interference with the Board's enforcement of the Act. We find strong support for this conclusion in *NLRB v. Robbins Tire & Rubber Co.*, 437 U.S. 214, 98 S.Ct. 2311, 57 L.Ed.2d 159 (1978), where the Supreme Court held that prehearing statements made by employees to the Board were exempt from disclosure under the Freedom of Information Act. The Court dealt at some length with the damage that disclosure of employee statements would cause to the administration of the Act:

The most obvious risk of "interference" with enforcement proceedings in this context is that employers or, in some cases, unions will coerce or intimidate employees and others who have given statements, in an effort to make them change their testimony or not to testify at all.

\* \* \* \* \* \*

The danger of witness intimidation is particularly acute with respect to current employees—whether rank and file, supervisory, or managerial—over whom the employer, by virtue of the employment relationship, may exercise intense leverage. Not only can the employer fire the employee, but job assignments can be switched, hours can be adjusted, wage and salary increases held up, and other more subtle forms of influence exerted.

\* \* \* \* \* \*

Furthermore, both employees and nonemployees may be reluctant to give statements to NLRB investigators at all, absent assurances that unless called to testify in a hearing, their statements will be exempt from disclosure until the unfair labor practice charge has been adjudicated.

*Id.* at 239–40, 98 S.Ct. at 2325.

We believe that an employer's direct request to an employee for that employee's statement to the Board presents the same dangers of influencing testimony or chilling prehearing statements that the Supreme Court described in *Robbins*. The possibility that an employer's request will have a coercive effect on testimony is even present when the employee's statement is favorable to the employer for "those known to have already given favorable statements are then subject to pressure to give even more favorable testimony." *Id.* at 240, 98 S.Ct. at 2325. Even more damaging to the administration of the Act is the general chilling effect that is caused by permitting employer requests not directed at trial preparation. If an employee knows that his statements may become available to his employer, he is certainly less likely to make a candid statement to the Board. *Wellman Industries, Inc. v. NLRB*, 490 F.2d 427, 431

(4th Cir.), *cert. denied*, 419 U.S. 834, 95 S.Ct. 61, 42 L.Ed.2d 61 (1974); *NLRB v. National Survey Services, Inc.*, 361 F.2d 199, 206 (7th Cir. 1966); *Texas Industries, Inc. v. NLRB*, 336 F.2d 128, 133 (5th Cir. 1964). The employee may even refuse to make a statement at all. *Robbins, supra*, 437 U.S. at 240, 98 S.Ct. 2325. Any such chilling effect is bound to interfere with the Board's enforcement of the Act. The Board may not initiate proceedings against an employer on its own motion. It must rely upon complaints made by individual employees and labor unions to uncover unfair labor practices. Moreover, a rule preventing employers from requesting statements except for purposes of trial will provide protection for employees in the vast majority of Board proceedings which are concluded without the necessity for trial. *Id.* at 241, 98 S.Ct. 2326.

For these reasons, we conclude that it violates § 8(a)(1) of the Act for an employer to request from an employee a copy of that employee's statement to the Board without assuring the employee that no reprisals will follow from refusal, and without showing that the requested statement is needed for trial preparation and that the request does not go beyond those needs. *NLRB v. Winn–Dixie Stores, Inc.*, 341 F.2d 750, 752–53 (6th Cir.), *cert. denied*, 382 U.S. 830, 86 S.Ct. 69, 15 L.Ed.2d 74 (1965); *Retail Clerks International Association v. NLRB*, 373 F.2d 655, 658 (D.C.Cir.1967). We believe that this rule provides sufficiently for the employer's legitimate interest in defending himself against those charges that do come to trial. We note also that the Board's own rules accommodate this interest of the employer by giving him access to statements of employees who become witnesses against the employer. 29 CFR § 102.118(b). In the present case, however, there was no showing that the requested information was needed for trial preparation nor was there any assurance against reprisal. We therefore uphold the decision of the Administrative Law Judge and the Board that the request violated § 8(a)(1) of the Act.

4. *Jurisdiction of the Board* :

Employer Maxwell contends that his business is essentially local and that its effect on interstate commerce is *de minimis*. The record indicates that in the year preceding trial Maxwell's business purchased goods, materials and supplies valued in excess of $6,000 which originated outside of the state of California. Maxwell relies on *Groneman v. International Brotherhood of Electrical Workers, Local 354*, 177 F.2d 995 (10th Cir. 1949), which held that the use of $6,000 worth of material shipped in interstate commerce was insufficient to support the jurisdiction of the Board. This decision, however, seems to stand alone and is contrary to the others in this circuit and elsewhere. For example, in *NLRB v. Inglewood Park Cemetery Association*, 355 F.2d 448 (9th Cir.), *cert. denied, sub nom. First Congregational Church v. NLRB*, 384 U.S. 951, 86 S.Ct. 1572, 16 L.Ed.2d 548 (1966), this court held that $3,000 worth of interstate purchases was not *de minimis* and did support jurisdiction. *Accord: NLRB v. Aurora City Lines, Inc.*, 299 F.2d 229 (7th Cir. 1962) ($2,000 sufficient); *Von Solbrig Hospital, Inc. v. NLRB*, 465 F.2d 173 (7th Cir. 1972) ($1925 sufficient).

It is true that this court refused to uphold jurisdiction in *Hiatt v. Schlecht*, 400 F.2d 875 (9th Cir. 1968), where the record showed only that the employer during the years in question had used $5600–$8000 of plumbing fixtures assumed to have been originally produced in other states. In view of Congress's intent to exercise the full extent of its commerce power in the National Labor Relations Act, *NLRB v. Reliance Fuel Oil Corp.*, 371 U.S. 224, 226, 83 S.Ct. 312, 313, 9 L.Ed.2d 279 (1963); *NLRB v. Children's Baptist Home*, 576 F.2d 256, 258 n.1 (9th Cir. 1978), the ruling in *Hiatt* may be substantially eroded by the later decision of *Daniel v. Paul*, 395 U.S. 298, 89 S.Ct. 1697, 23 L.Ed.2d 318 (1969). In any event, we find *Hiatt* distinguishable from the present case. While neither case disclosed any direct purchases by the employer from out–of–state sellers, the evidence now before us shows far more effect on interme-

diate commerce than that presented by the meagre record in *Hiatt.* Maxwell was shown not only to have purchased $6000 worth of goods originating in other states, but the particular goods were identified and shown to have been handled only by the importer before being delivered to Maxwell. A $1920 order of cement was procured by a local dealer from an out–of–state supplier and was delivered to Maxwell without the importer's having operated on or modified the goods in any way. Large insurance policies written by out–of–state companies were taken out on the business by Maxwell through local agents. In view of this record, we cannot say that a labor dispute in Maxwell's enterprise does not "affect commerce" within the expansive meaning of § 10(a) of the National Labor Relations Act, 29 U.S.C. § 160(a).

**5. *Deferral to Arbitration* :**

Employer Maxwell suggests that the Board should have deferred its decision in favor of an arbitration proceeding to which the parties had agreed, but which they had not pursued to a conclusion. While the Board does have discretion to defer to an arbitration award, *Spielberg Manufacturing Co.,* 112 NLRB 1080 (1955), this court has held that it may not defer the decision of the statutory charge unless the arbitral tribunal has clearly decided the unfair labor practice issue. *Stephenson v. NLRB,* 550 F.2d 535 (9th Cir. 1977). The Board was therefore justified in going forward with the present proceeding. *See NLRB v. Thor Power Tool Co.,* 351 F.2d 584 (7th Cir. 1965).

**6. *Conclusion* :**

The decision of the Administrative Law Judge and the Board regarding both violations of § 8(a)(1) is supported by substantial evidence. Enforcement is ordered.