889 F.2d 135
 27 Soc.Sec.Rep.Ser. 554, Medicare&Medicaid Gu 38,259
James L. WILKINS, as Successor-Executor of the Estate of
Harry L. Wilkins, Plaintiff-Appellant,
v.
Louis W. SULLIVAN,* Secretary of Health and
Human Services, Defendant-Appellee.
 No. 89-1699.
 United States Court of Appeals,
Seventh Circuit.
 Argued Sept. 15, 1989.
Decided Nov. 14, 1989.
 
 Michael T. Mahoney, Chillicothe, Ill., for plaintiff-appellant.
 K. Tate Chambers, Asst. U.S. Atty., Peoria, Ill., Donald F. Dickey, Dept. of Health & Human Services, Office of the General Counsel, Baltimore, Md., for defendant-appellee.
 Before CUDAHY and FLAUM, Circuit Judges, and GRANT, Senior District Judge.**
 CUDAHY, Circuit Judge.
 
 
 1
 The plaintiff in this case, Harry Wilkins,[1] appeals the denial of his claim for Medicare benefits to pay the costs of a hospital stay during which he underwent bilateral carotid body resection ("BCBR") surgery. The Secretary of Health and Human Services ("HHS") issued a final decision denying Wilkins's claim, and the district court upheld the Secretary's decision. Wilkins now challenges this determination, maintaining that the Secretary improperly relied upon Health Care Financing Administration ("HCFA") Ruling 80-2 to deny Medicare benefits.
 
 I.
 
 2
 Congress established the Medicare program by enacting Title XVIII of the Social Security Act, 79 Stat. 291, as amended, 42 U.S.C. Sec. 1395 et seq. (1982), which provides federally funded health insurance for the aged and disabled. Congress broadly defined the benefits authorized by Medicare, but then restricted the scope of the program by precluding reimbursement for any "items or services ... [which] are not reasonable and necessary for the diagnosis or treatment of illness or injury...." 42 U.S.C.A. Sec. 1395y(a) (West Supp.1989). The Act does not precisely define which items or services are "reasonable and necessary" but instead vests the Secretary with authority to determine whether individual claimants are entitled to benefits "in accordance with regulations prescribed by him." 42 U.S.C.A. Sec. 1395ff(a).
 
 
 3
 Pursuant to these statutes, the Secretary (through the HCFA) began promulgating regulations that govern Medicare payments for BCBR surgery.[2] First, after receiving numerous claims for reimbursement for BCBR surgery, HCFA asked the Public Health Service (the "PHS") to review the surgical procedure. PHS advised HCFA that BCBR "lacks general acceptance by the medical community because of questions concerning efficacy and safety." HCFA Ruling 80-2, 45 Fed.Reg. 71426, 71426 (1980). Next, the National Heart, Lung and Blood Institute of the National Institutes of Health (the "NIH") convened a panel of specialists to conduct a thorough examination of the BCBR procedure. This panel considered the pertinent literature, interviewed surgeons familiar with the procedure and concluded in its report that "there was not sufficient evidence to establish the safety and efficacy of the bilateral carotid body resection procedure for relief of pulmonary distress.... [T]he panel [also] noted that 'theoretical considerations suggest that the risk of hypoventilation[3] may be increased [by BCBR], especially in patients with chronic obstructive pulmonary disease.' " Id. (footnote supplied). Faced with this conclusion, HCFA issued an instruction in January 1979 to fiscal intermediaries in the Medicare system that Medicare would not provide reimbursement for the BCBR procedure.
 
 
 4
 Some claimants, having been denied reimbursement from Medicare intermediaries because of the instruction, pursued their cases before administrative law judges ("ALJs"),[4] who were not bound by the instruction. Indeed, because most ALJs continued to award compensation to Medicare claimants for the BCBR procedure, HCFA again consulted with PHS, and then reaffirmed its original policy by issuing HCFA Ruling 80-2 on October 28, 1980. The ruling explicitly excludes BCBR surgery from Medicare coverage; unlike the earlier instruction, however, HCFA made Ruling 80-2 binding upon all ALJs and the Appeals Council. 20 C.F.R. Sec. 422.408 (1988). In plain language, this ruling states:
 
 
 5
 Bilateral carotid body resection performed to relieve and treat pulmonary symptoms and diseases is not established as safe and effective and, therefore, is excluded from Medicare coverage under the authority of section 1862(a)(1) of the Act [42 U.S.C.A. Sec. 1395y(a) ].
 
 
 6
 HCFA Ruling 80-2, 45 Fed.Reg. at 71427. The validity and effect of this ruling are the central issues in this case.
 
 
 7
 Wilkins, who suffered from chronic obstructive pulmonary disease, learned of BCBR surgery in the winter of 1984-1985 and underwent the procedure in May 1985. He submitted a claim for Medicare reimbursement to a fiscal intermediary, who denied coverage, and then requested a hearing before an ALJ, who relied upon Ruling 80-2 to affirm the decision of the fiscal intermediary. Once the ALJ denied his claim, Wilkins sought review in the Appeals Council, 42 C.F.R. Secs. 405.701(c), 405.724 (1988) (incorporating 20 C.F.R. Sec. 404.967 (1988)), which refused to review the ALJ's decision. Pursuant to 42 U.S.C.A. sections 1395ff(b)(1)(C) and (b)(2), Wilkins filed his claim in federal district court, challenging the Secretary's final decision. Like all the adjudicative bodies before it, the federal district court denied Wilkins's claim, concluding that the Secretary's issuance of and reliance upon Ruling 80-2 to deny a BCBR claim was within the scope of his administrative authority. Wilkins v. Secretary of Health and Human Servs., No. 87-1157, slip op. at 12 (C.D.Ill. Jan. 30, 1989). Wilkins now appeals the district court's decision, challenging HCFA Ruling 80-2 and its application to his Medicare claim.
 
 II.
 
 8
 Before addressing the merits of this case, we must determine whether we have jurisdiction over Wilkins's claim. Wilkins relies upon 28 U.S.C. section 1361, 28 U.S.C. section 1331 and 42 U.S.C.A. section 1395ff to vest the district court with jurisdiction to review the denial of Medicare benefits. However, 42 U.S.C. section 405(h) (as applied to Medicare by 42 U.S.C.A. section 1395ii) provides that any "claim arising under" the Medicare program must be brought exclusively under section 405(g). See Heckler v. Ringer, 466 U.S. 602, 614-15, 104 S.Ct. 2013, 2021-22, 80 L.Ed.2d 622 (1984); Weinberger v. Salfi, 422 U.S. 749, 760-61, 95 S.Ct. 2457, 2464, 45 L.Ed.2d 522 (1975). Such a claim was considered by the Supreme Court in Heckler v. Ringer; there, the Court heard a challenge to the Secretary's authority to promulgate Ruling 80-2 made by plaintiffs who underwent or desired to undergo BCBR surgery. Although the Ringer plaintiffs mounted a facial challenge to the ruling, the Court concluded that the challenge was, "at bottom, a claim that they should be paid for their BCBR surgery." 466 U.S. at 614, 104 S.Ct. at 2021. Since those plaintiffs had not exhausted their administrative remedies, they could not seek to overturn the Secretary's decision in federal court. Id. at 614-16, 104 S.Ct. at 2021-22.
 
 
 9
 Unlike the plaintiffs in Heckler v. Ringer, Wilkins has exhausted his administrative remedies and therefore may challenge the Secretary's final order in federal district court. See 42 U.S.C.A. Sec. 1395ff. Of course, we have jurisdiction to hear an appeal from a final judgment of a federal district court, pursuant to 28 U.S.C. section 1291.III.
 
 A.
 
 10
 Wilkins makes several arguments against the application of Ruling 80-2 to his Medicare claim. First, he asserts that the Secretary acted outside the scope of his authority in promulgating Ruling 80-2, arguing that the Secretary's determination that BCBR surgery is not "reasonable and necessary" conflicts with Congress's express intent in enacting the Medicare program. Wilkins has not offered support for this position, nor can we find any. Neither the Medicare provisions of the Social Security Act nor its legislative history indicates whether BCBR surgery should be considered "reasonable and necessary." See, e.g., 42 U.S.C.A. Sec. 1395y(a); S.Rep. No. 404, 89th Cong., 1st Sess., reprinted in 1965 U.S.Code Cong. & Admin.News 1943, 2127 (restating statutory language). Instead of precisely defining which procedures would be covered by the program, Congress sketched Medicare benefits in broad strokes, but specifically precluded payment for those items and services that the Secretary found were "not reasonable and necessary for the diagnosis or treatment of illness or injury." 42 U.S.C.A. Secs. 1395ff(a), 1395y(a). That is precisely what the Secretary did in this instance. He asked the PHS to review the efficacy and safety of BCBR surgery, convened a panel of medical experts to review the procedure and issued an instruction and an interpretative ruling that informed Medicare intermediaries not to reimburse claimants for costs associated with the surgical operation.[5]
 
 
 11
 In this regard, we are constrained by the Administrative Procedure Act (made applicable to the Secretary's Medicare determinations by 42 U.S.C.A. section 1395oo(f)(1)), which requires that we uphold agency decisions unless they are "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law...." 5 U.S.C. Sec. 706. The comprehensive study performed at the direction of the Secretary--and the Secretary's reliance on this study--belies Wilkins's claim that HCFA's Ruling 80-2 was unreasonable, arbitrary or capricious.[6]
 
 
 12
 Similarly, we must defer substantially to an agency's construction of its own regulations. Lyng v. Payne, 476 U.S. 926, 939, 106 S.Ct. 2333, 2341-42, 90 L.Ed.2d 921 (1986); see Homemakers North Shore, Inc. v. Bowen, 832 F.2d 408, 411 (7th Cir.1987) (agency construction of regulations usually upheld). The Secretary's determination that BCBR surgery is excluded from coverage under HCFA regulations is no exception to this rule. 42 C.F.R. Sec. 405.310(k) (1988) (services that are not "reasonable and necessary" are excluded).[7]B.
 
 
 13
 We are also unpersuaded by Wilkins's second argument--that his post-operation improvement demonstrates the arbitrary nature of the Secretary's decision. While BCBR surgery may have relieved Wilkins's symptoms--he could breath freely without suffering coughing spasms or chest pains--the district court found little change in the course of the disease itself: "The emphysema itself was not cured; its symptoms were merely relieved." Wilkins v. Secretary of Health & Human Servs., No. 87-1157, slip op. at 2 (C.D.Ill. Jan. 30, 1989). We recognize, of course, that the relief of painful symptoms is significant even when objective tests do not demonstrate improvement in the underlying disease. But such relief should not come at the expense of possible harmful effects: the NIH panel determined that the risk of hypoventilation may be increased by the BCBR procedure. HCFA Ruling 80-2, 45 Fed.Reg. at 71426. The suppression of symptoms may equate with a lowering of bodily defenses. Thus, since the carotid bodies in the neck typically regulate a person's response to low levels of oxygen, their removal by the BCBR procedure may in fact exacerbate the illness by leading to the accumulation of excessive carbon dioxide in the patient's bloodstream. Task Force Report, 45 Fed.Reg. at 71429.
 
 
 14
 It is precisely this type of decision--made within the context of an extremely technical and complex field--that courts should leave in the hands of expert administrators. This is not an appropriate occasion for judges to play doctor. Congress delegated these difficult decisions to agencies that have developed specialized knowledge. See Butler County Memorial Hosp. v. Heckler, 780 F.2d 352, 356 (3d Cir.1985); see also Aluminum Co. of Am. v. Central Lincoln Peoples' Util. Dist., 467 U.S. 380, 390, 104 S.Ct. 2472, 2479-80, 81 L.Ed.2d 301 (1984) (principles of deference have particular force when subject under regulation is technical and complex); Skidmore v. Swift & Co., 323 U.S. 134, 140, 65 S.Ct. 161, 164, 89 L.Ed. 124 (1944) (administrative rulings, while not controlling, constitute body of experience and informed judgment). We will defer substantially to the Secretary's considered judgment here.
 
 C.
 
 15
 Finally, Wilkins claims that the Secretary violated generally accepted principles of administrative law and the doctrine of res judicata in promulgating Ruling 80-2. He argues that the Secretary's BCBR ruling is an "abrupt change of course" from prior HCFA practice and therefore cannot withstand scrutiny. We disagree on both points.
 
 
 16
 The facts of this case refute Wilkins's claim that Ruling 80-2 constituted an "abrupt change of course." The Secretary has consistently considered BCBR surgery to be unreasonable under 42 U.S.C.A. section 1395y; he convened a panel of surgical experts to review the safety and efficacy of BCBR surgery, circulated an instruction to fiscal intermediaries not to reimburse claimants for the surgery and finally issued Ruling 80-2 to prohibit ALJs and Appeals Councils from providing reimbursement.
 
 
 17
 Despite this apparent consistency, Wilkins argues that because previous ALJ and Appeals Council decisions authorized payment for BCBR surgery, the Secretary is precluded from now contradicting this practice. Wilkins, however, misconceives the structure of HHS. It is true that the Secretary created a system of agency adjudication--administered first by an ALJ and then by an Appeals Council--to reconsider the denial of claims. Nonetheless, the Secretary did not relinquish his authority to interpret the Medicare statutes; he retained the authority to promulgate final orders that are binding on all HCFA decision-makers. See 42 C.F.R. Sec. 401.108 (1988); 20 C.F.R. Sec. 422.408 (1988); see also Lauer v. Bowen, 818 F.2d 636, 640 & n. 9 (7th Cir.1987) (discussing HHS interpretative rulings). In the case before us, the Secretary, noting that the ALJ and Appeals Council had not adopted a consistent policy on BCBR reimbursement, issued Ruling 80-2 to make his own coverage decision binding on these two adjudicatory bodies. This ruling does not constitute a change of course; rather, it simply clarifies agency policy. See Homemakers North Shore, Inc. v. Bowen, 832 F.2d 408, 413 (7th Cir.1987) (" 'The Secretary's position' is the position of the Department as an entity, and the fact that people in the chain of command have expressed divergent views does not diminish the effect of the agency's resolution of those disputes.").
 
 
 18
 Even if Ruling 80-2 constituted a reversal, however, Wilkins would have to demonstrate that the Secretary altered agency policy without explanation. Courts have held repeatedly that administrative agencies may change course if they justify the change. See, e.g., Motor Vehicles Mfrs. Ass'n v. State Farm Mutual Auto. Ins. Co., 463 U.S. 29, 57, 103 S.Ct. 2856, 2873-74, 77 L.Ed.2d 443 (1983); Continental Web Press, Inc. v. NLRB, 742 F.2d 1087, 1093 (7th Cir.1984); Illinois Bell Tel. Co. v. FCC, 740 F.2d 465, 470-71 (7th Cir.1984). In the case before us, the Secretary explained in great detail the reasons supporting his decision to issue Ruling 80-2. See HCFA Ruling 80-2, 45 Fed.Reg. at 71426-27. The Ruling discusses advice considered by the Secretary as well as the comprehensive report of the special Task Force that studied BCBR. This discussion is sufficient to justify the purported change in policy pursuant to the regulations.
 
 IV.
 
 19
 It may be unfortunate that Congress and HHS cannot provide funds for novel surgical procedures that may relieve pain and suffering. To be sure, adherents of the BCBR procedure may someday be able to demonstrate to the Secretary and to the general medical community that its benefits exceed its costs. Until then, however, we cannot sanction the provision of federal funds to support a surgical procedure that the Secretary, after appropriate analysis, is unable to establish as safe and effective.
 
 
 20
 The judgment of the District Court is therefore
 
 
 21
 AFFIRMED.
 
 
 
 *
 As originally filed, the present appeal named Otis R. Bowen as the Defendant-Appellee. Pursuant to Fed.R.App.P. 43(c)(1), we have substituted his successor at the Department of Health and Human Services as the appropriate Defendant-Appellee in this proceeding
 
 
 **
 The Honorable Robert A. Grant, Senior District Judge for the Northern District of Indiana, is sitting by designation
 
 
 [1]
 On March 17, 1989, Wilkins died, and his widow, as executrix of his estate, moved to substitute herself as a party pursuant to Fed.R.App.P. 43(a). Having received no objection, we granted this motion on June 5, 1989. Then, on August 28, 1989, we granted appellant counsel's motion to substitute James L. Wilkins, the successor-executor of the Estate of Harry L. Wilkins, as a party. Nonetheless, for the sake of clarity and consistency, we will refer to Harry Wilkins as the Plaintiff-Appellant throughout this opinion
 
 
 [2]
 A surgeon performing the BCBR procedure removes both carotid bodies (very small structures that control the diameter of the bronchial tubes) from the neck in order to relieve the shortness of breath associated with pulmonary disease. National Heart, Lung and Blood Institute, Report of the Task Force on Bilateral Carotid Body Resection (NIH, PHS 1978) (hereinafter "Task Force Report "), reprinted in HCFA Ruling 80-2, Appendix I, 45 Fed.Reg. 71426, 71427-29 (1980). The Winter BCBR technique, at issue in this case, allows surgeons to remove the carotid bodies without causing substantial damage to the lateral tracts of the carotid sinus nerves. Id. at 71428
 
 
 [3]
 "Hypoventilation" has been defined as a reduction in the rate and depth of breathing. Taber's Cyclopedic Medical Dictionary 814 (15th ed.1985)
 
 
 [4]
 Once the HCFA affirms an intermediary's denial of a Medicare claim, the claimant may seek a hearing before an ALJ if the amount in controversy is $100 or more. 42 C.F.R. Sec. 405.720 (1988)
 
 
 [5]
 Because some claimants may have relied upon pre-1980 ALJ and Appeals Council awards, the Secretary did not make Ruling 80-2 binding until its publication in the Federal Register. 45 Fed.Reg. at 71427. In that regard, Wilkins's claim that HCFA should have consolidated his case with In re Frank Aurit ex rel. Louise Aurit, No. wcs-oe-ahtv(HHS ALJ Decision, Sept. 10, 1986)--a case in which BCBR surgery was performed before 1980--is unpersuasive. Further, federal regulations simply do not require HCFA to consolidate its cases. See 20 C.F.R. Sec. 404.952 (1988) (using permissive language)
 
 
 [6]
 Nor are we convinced that the Secretary's so-called "automatic reliance" on Ruling 80-2, without providing an individualized hearing at each level of administrative consideration, was arbitrary or capricious. The Supreme Court has left such procedural decisions, even within the context of BCBR surgery, to the discretion of the Secretary: "The Secretary's decision as to whether a particular medical service is 'reasonable and necessary' and the means by which she implements her decision, whether by promulgating a generally applicable rule or by allowing individual adjudication, are clearly discretionary decisions. See 42 U.S.C. Sec. 1395ff(a); see also Heckler v. Campbell, 461 U.S. 458, 467 [103 S.Ct. 1952, 1957, 76 L.Ed.2d 66] (1983)." Heckler v. Ringer, 466 U.S. at 617, 104 S.Ct. at 2022-23
 
 
 [7]
 Our conclusion is bolstered by the substantial deference we accord to reasonable agency constructions of statutes. Each party here has offered a conflicting interpretation of the phrase "reasonable and necessary" as it appears in 42 U.S.C.A. section 1395y and as it applies to BCBR surgery. Addressing this, to the extent appropriate, as a problem of statutory construction, we turn to the first prong of Chevron U.S.A. v. Natural Resources Defense Council, Inc., 467 U.S. 837, 104 S.Ct. 2778, 81 L.Ed.2d 694 (1984): "If the intent of Congress is clear, that is the end of the matter; for the court, as well as the agency, must give effect to the unambiguously expressed intent of Congress." Id. at 842-43, 104 S.Ct. at 2781. Since we have determined that Congress has not spoken directly or explicitly on the issue of BCBR surgery, our analysis, to the extent Chevron is controlling, must be guided by its second prong:
 If ... the court determines Congress has not directly addressed the precise question at issue, the court does not simply impose its own construction on the statute, as would be necessary in the absence of an administrative interpretation. Rather, if the statute is silent or ambiguous with respect to the specific issue, the question for the court is whether the agency's answer is based on a permissible construction of the statute.
 Id. at 843, 104 S.Ct. at 2781-82 (footnotes omitted). We also must uphold any reasonable construction of the statute, not merely the one that we might have reached in the first instance. FEC v. Democratic Senatorial Campaign Comm'n, 454 U.S. 27, 39, 102 S.Ct. 38, 46, 70 L.Ed.2d 23 (1981); Zenith Radio Corp. v. United States, 437 U.S. 443, 450, 98 S.Ct. 2441, 2445, 57 L.Ed.2d 337 (1978); Unemployment Compensation Comm'n v. Aragon, 329 U.S. 143, 153, 67 S.Ct. 245, 250, 91 L.Ed. 136 (1946). For the reasons discussed infra Section III(B), we believe that HCFA Ruling 80-2 constitutes a reasonable interpretation of 42 U.S.C.A. section 1395y.