BLANKENSHIP AND ASSOCIATES, INC. and Rayford T. Blankenship, Petitioners, Cross–Respondents,

v.

NATIONAL LABOR RELATIONS BOARD, Respondent, Cross–Petitioner.

Nos. 92–2777, 92–3142.

United States Court of Appeals, Seventh Circuit.

Argued April 13, 1993.

Decided July 15, 1993.

Joel H. Kaplan, Carl E. Johnson (argued), Seyfarth, Shaw, Fairweather & Geraldson, Chicago, IL, Rayford T. Blankenship, Greenwood, IN, for Blankenship and Associates, Inc. in No. 92–277.

Charles P. Donnelly, Jr., N.L.R.B., Contempt Litigation Branch, Aileen A. Armstrong, David A. Fleischer (argued), N.L.R.B., Appellate Court, Enforcement Litigation, Washington, DC, Richard P. Heller, N.L.R.B., Region 4, Philadelphia, PA, for N.L.R.B. in No. 93–3142.

Joel H. Kaplan, Carl E. Johnson, Seyfarth, Shaw, Fairweather & Geraldson, Chicago, IL, Rayford T. Blankenship, Robert T. Anderson, Greenwood, IN, Tom G. Jones, Jones, Johnson & Gray, Franklin, IN, for Blankenship and Associates, Inc. and Rayford T. Blankenship in No. 92–3142.

Before POSNER and FLAUM, Circuit Judges, and RONEY, Senior Circuit Judge.*

POSNER, Circuit Judge.

Before us are cross-petitions to enforce and to set aside a remedial order of the National Labor Relations Board directed, unusually, against a consultant to an employer rather than against the employer itself. The consultant is Rayford Blankenship, whose headquarters is in Indiana. He assisted

Gress Poultry, Inc., a poultry processor in Pennsylvania (these geographical details are pertinent), in a successful effort to defeat a union campaign to organize Gress's workers. The Board's General Counsel instituted an unfair labor proceeding against both Gress and Blankenship (and Blankenship's company, but we shall ignore that detail for the moment). Gress settled. The proceeding continued against Blankenship and resulted in a decision in which the Board found that Blankenship had committed unfair labor practices as Gress's agent and ordered him to cease and desist from such conduct in the future on behalf of any employer.

The conduct in which the Board found that Blankenship had engaged on behalf of Gress was gross. At one meeting with workers Blankenship mentioned an employer who, he said, had closed its plant when its employees voted in the union—in fact had put a large padlock on the plant the day after the representation election. Blankenship then brandished a large padlock and said it would be put on the doors to Gress's plant if the union won the election. He repeatedly told other workers that Gress had hired him not to keep the union out but to close the plant legally. He told one union organizer that the organizer was fat because he made good money working for the union and told another that he had a nice leather jacket because he made lots of money working for the union—and then added that although Blankenship might be an old man "if you take that coat off I'll kick the shit out of you." On the day of the election he asked union organizers in the presence of employees what they would do about getting work for the employees when the plant closed. Also on that climactic day of the organizing campaign he took photographs of employees and union organizers, removed a sign that said "Vote Yes" from the windshield of a union organizer's car and tore it up in the presence of employees, displayed in their presence a picture of a lock and key, and told union organizers, again in the presence of employees, that Gress had given him a padlock the shaft of which was the size of his thumb to put on the door of the plant when he closed it. He

---

* Hon. Paul H. Roney of the Eleventh Circuit, sitting by designation.

denied doing these things, but the administrative law judge disbelieved his testimony.

■■■ Blankenship does not deny that the conduct that we have summarized violated the National Labor Relations Act, but he argues on a variety of grounds that the Board should not have issued a broad, or for that matter any, cease and desist order against him. He denies to begin with that the conduct brought him under the Board's jurisdiction. Yet he admits that Gress was within that jurisdiction because it engaged in interstate commerce in the amount that the Board requires before it will assert jurisdiction. The Act defines the term "employer" to include "any person acting as an agent of an employer." 29 U.S.C. § 152(2). See, e.g., *National Lime & Stone Co.*, 62 N.L.R.B. 282, 298 n. 26 (1945). Once Gress was within the Board's jurisdictional reach, any agent of his who committed unfair labor practices on Gress's behalf was within that reach as well, regardless of the agent's own commerce. So the Board assumed in *Chalk Metal Co.*, 197 N.L.R.B. 1133, 1134, 1148 (1972); cf. *National Welders Supply Co.*, 132 N.L.R.B. 660, 667 (1961). But in *St. Francis Hospital*, 263 N.L.R.B. 834, 847 (1982), enforced, 729 F.2d 844 (D.C.Cir.1984), it assumed that the relevant commerce was that of the agent. In none of the cases we have cited was the issue actually discussed. In a case in which the Board exonerated Blankenship from charges similar to those in this case, the administrative law judge mentioned both approaches but did not have to choose between them because (as here) there was jurisdiction under either. *Blankenship & Associates, Inc.*, 290 N.L.R.B. 557, 560 (1988). They could be regarded as alternative tests of jurisdiction, and then no choice between them would be necessary; but the Board hasn't discussed that possibility either.

Basing the Board's jurisdiction on the employer's involvement in interstate commerce not only is the natural inference from the statutory definition of "employer" but also is readily justified on practical grounds. Both the effect on interstate commerce, and the amount of interstate commerce affected, are the same whether an employer commits unfair labor practices directly or an agent commits the same unfair labor practices on the employer's behalf. To confine attention to the agent's direct involvement in interstate commerce could have the consequence of excluding most unfair labor practices from the Board's jurisdiction, because most are committed by individual employees who are not engaged in interstate commerce other than as their employer's agent. So Blankenship was within the Board's jurisdiction under the first approach but it was also within that jurisdiction under the second approach, which looks at the agent's involvement in commerce. Blankenship, headquartered in Indiana, rendered services to Gress in Pennsylvania; and no more was required to put Blankenship's own activities within interstate commerce. *NLRB v. Reliance Fuel Oil Corp.*, 371 U.S. 224, 226–27, 83 S.Ct. 312, 313–14, 9 L.Ed.2d 279 (1963) (per curiam); see *NLRB v. Mars Sales & Equipment Co.*, 626 F.2d 567, 575 (7th Cir.1980); *NLRB v. National Survey Service, Inc.*, 361 F.2d 199, 204 (7th Cir.1966). It is true that the Board has adopted a rule that it will not assert jurisdiction over nonretail enterprises, including labor-management consultants, unless they have annual sales of at least $50,000 to firms engaged in interstate commerce. *Siemons Mailing Service*, 122 N.L.R.B. 81, 85 (1958); *St. Francis Hospital, supra*, 263 N.L.R.B. at 839. But Blankenship crossed that threshold. The Board has a higher threshold for law firms, $250,000, *Camden Regional Legal Services, Inc.*, 231 N.L.R.B. 224 (1977); *Kaplan, Sicking, Hessen, Sugarman, Rosenthal & Zientz*, 250 N.L.R.B. 483, 484 (1980), which neither Blankenship nor his company reached. But he is not a lawyer and his company is not a law firm, although it employs a lawyer, who joined with Blankenship in committing unfair labor practices on behalf of Gress. As a consultant, Blankenship was subject to the $50,000 floor, not the $250,000 floor for law firms. *St. Francis Hospital, supra*, 263 N.L.R.B. at 839.

■ The other issue concerns Blankenship's prior bad acts. The administrative law judge mentioned that Blankenship had been named in seven previous decisions of the Board as the author of unfair labor practices on Gress's behalf, though in none of those

cases had he been named as a respondent himself, as he was in this case. Blankenship complains that the use of his prior bad acts to establish a propensity to violate the National Labor Relations Act violates Rule 404(b) of the Federal Rules of Evidence. The Act directs the Board to obey those rules where practicable, 29 U.S.C. § 160(b); *NLRB v. Augusta Bakery Corp.*, 957 F.2d 1467, 1479 (7th Cir.1992), and there is no suggestion that it was not practicable here. But the administrative law judge stated that he was basing his evaluation of Blankenship's conduct in the present case, and his estimate of Blankenship's credibility, solely on the record in this case. He did not use Blankenship's prior unfair labor practices to infer a propensity for committing such practices that could be used as evidence that he had committed them in this case. The Board in its decision took note of the seven decisions as well—and used them to justify a broader order than the administrative law judge had issued, an order commanding Blankenship to cease and desist from committing unfair labor practices as an agent for *any* employer within the Board's jurisdiction, rather than just as an agent for Gress.

■ The Board's use of the prior decisions was not forbidden by Rule 404(b). It was analogous to the use of a convicted defendant's criminal record by a sentencing judge to justify a heavier sentence. But Blankenship contends that the use of the prior decisions denied him due process of law because, unlike the situation in which a criminal defendant's record is used to jack up his sentence, he was not a party to any of those cases. The employer party in those cases might have tried to blame him for the unfair labor practices of which it was accused (what is called in criminal cases "trying the empty chair"), and he would have had no opportunity to defend himself. The Board's lawyer responds that the Board is entitled to take judicial notice (or as it is sometimes called when an administrative agency rather than a court is involved, "official notice") of its previous decisions. The response misses the point. The Board took judicial notice not of the opinions themselves but of the *facts* found in those opinions bearing on Blankenship's guilt, and it was entitled to do that

only if the facts were "not subject to reasonable dispute." Fed.R.Evid. 201(b). The authorities that the Board's lawyer cites, *NLRB v. Selvin*, 527 F.2d 1273, 1277 (9th Cir.1975), and *Chalk Metal Co., supra*, 197 N.L.R.B. at 1133, are cases in which the respondent in the later case had been named as a respondent in the earlier cases as well; so that the taking of judicial notice was equivalent to applying the doctrine of collateral estoppel.

Although the use of the previous decisions in this case was questionable, we are not disposed to deny enforcement. Blankenship did not present any reason to the Board, and he presents none to us either, for believing that, in fact, the earlier decisions contained erroneous findings concerning his involvement in the unfair labor practices found in those cases; and with Gress having terminated its relationship with Blankenship, an order limited to forbidding him to commit unfair labor practices on behalf of Gress would be a nullity. Given the egregious character of Blankenship's violations in this case and the fact that his relationship with the employer on whose behalf he committed the violations has ceased, it is unlikely that the Board would have entered a narrower order than it did even if it had disregarded the previous decisions in which he had been found to have committed similar violations. For any narrower order would have been no order, leaving Blankenship completely free to engage in unlawful conduct on behalf of other employers.

■ Blankenship's last argument is that it is unprecedented for the Board to enter a broad order against a consultant who has not been named as a respondent, and found liable, in at least one previous case. Well, it is "unprecedented" in the sense that the Board has never done it before. But there is always a first time. It is true that an administrative agency has less freedom to depart from precedent than a court has; it must explain why it is departing—it cannot just ignore a pesky precedent, as courts sometimes do. *Continental Web Press, Inc. v. NLRB*, 742 F.2d 1087, 1093–94 (7th Cir. 1984); *Sonicraft, Inc. v. NLRB*, 905 F.2d

146, 148–49 (7th Cir.1990); *Wilkins v. Sullivan*, 889 F.2d 135, 141 (7th Cir.1989). But it does not follow that an agency can never do anything that it has not done before. Otherwise the administrative process could never get going. It is not as if the Board had laid down a rule, whether in common law fashion or otherwise, that every consultant is entitled to one free bite at the apple. (Actually three bites: the one that sparked the first proceeding, the one that sparked the second proceeding, and one after the broad order issued in that proceeding but before the order was enforced by a court of appeals—only then, after the second order had been enforced, would the respondent face contempt sanctions for violating the broad order.) It just has proceeded cautiously. It did not, by doing so, create a reasonable expectation in Blankenship that he could violate the National Labor Relations Act with impunity until he was named a second time as a respondent in an unfair labor practice case.

The Board's failure to discuss the jurisdictional issue, and its casual attitude toward questionable evidence, illustrate once again that the Board is not a model for the administrative process to emulate. This case was so one-sided, however, that there can be no reasonable doubt about what the outcome would have been had the Board dotted all its i's and crossed all its t's.

The petition for review is denied, and the cross-petition to enforce the Board's order is granted.