50 F.3d 18
 NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
WEST COAST INDUSTRIAL RELATIONS, INC., Petitioner,
v.
NATIONAL LABOR RELATIONS BOARD, Respondent.
NATIONAL LABOR RELATIONS BOARD, Petitioner,
v.
WEST COAST INDUSTRIAL RELATIONS, INC., Respondent.
 Nos. 93-70521, 93-70552.
 United States Court of Appeals, Ninth Circuit.
 Argued and Submitted Feb. 15, 1995.
Decided March 7, 1995.
 
 Before: TANG and O'SCANNLAIN, Circuit Judges, and MERHIGE* District Judge.
 MEMORANDUM**
 West Coast Industrial Relations Association ("WCIRA") appeals from an order of the National Labor Relation Board ("NLRB" or "Board") denying its motion to reopen proceedings. The NLRB cross-applies for enforcement of its order requiring WCIRA to cease and desist from interrogating employment applicants and to post notice of its violation. We reverse the order denying the motion to reopen and remand to the Board to reopen the case and modify the remedial order.
 WCIRA argues that questioning Maule about his union membership was not an unfair labor practice. We enforce the Board's decision and order if the Board's findings of fact are supported by substantial evidence and if the Board applied the law correctly. Clear Pine Mouldings, Inc. v. NLRB, 632 F.2d 721, 724 (9th Cir.1980), cert. denied, 451 U.S. 984 (1981). Although WCIRA phrases the issue as one of substantial evidence, we construe the issue as whether the Board applied the law on interrogation correctly.
 Section 7 of the NLRA grants employees "the right to self-organization, to form, join or assist labor organizations, to bargain collectively through representatives of their own choosing, and to engage in other concerted activities for the purpose of collective bargaining." 29 U.S.C. Sec. 157. Section 8(a)(1) implements this guarantee by making it an unfair labor practice to "interfere with, restrain or coerce employees in the exercise of the rights guaranteed in section 157." 29 U.S.C. Sec. 158(a)(1).
 To determine whether interrogation of employees constitutes an unfair labor practice in violation of Sec. 8(a)(1), the Board generally considers "whether under all of the circumstances the interrogation reasonably tends to restrain, coerce, or interfere with rights guaranteed by the Act." Rossmore House, 269 N.L.R.B. 1176, 1177 (1984), aff'd, Hotel Employees and Restaurant Employees Union, Local 11 v. NLRB, 760 F.2d 1006 (1985). Factors to be considered include the background of the employer's relationship with the union, the nature of the information sought, the identity of the questioner, and the place and method of interrogation. Sunnyvale Medical Clinic, Inc., 277 N.L.R.B. 1217, 1218 (1985); Rossmore House, 269 N.L.R.B. at 1178 n. 20.
 When employee interrogation occurs during a job interview, the Board modifies its analysis. The Board generally still considers the totality of the circumstances, but heavily weighs the fact that the interrogation occurred during a job interview.[1] See Active Transportation, 296 NLRB 431 n. 3 (1989). We defer to the Board's interpretation of the NLRA. Mesa Verde Const. Co. v. Northern Cal. Dist. Council of Laborers, 861 F.2d 1124, 1134 (9th Cir.1988) (en banc). Therefore, we will follow the modified totality approach.
 Because this approach involves a case-by-case analysis, we look to several NLRB decisions for guidance. Asking an employee how he feels about the union, during a job interview, constitutes unlawful interrogation because "an applicant may understandably fear that any answer he might give to questions about union sentiments ... may well affect his job prospects." United L.N. Glass, Inc., 297 NLRB at 329 n. 1. Coercion is reinforced when the interviewer states that the employer will do everything it can to keep the union out. Id. Unlawful coercion occurs when an employer asks a prospective employee about his views on the union during a job interview and the prospect then meets the company president, who expresses further concern about unionization. Active Transportation, 296 NLRB at 431 n. 3. Coercion is not undone by assurances later in the interview that the prospects' views on unionization are irrelevant to the employer. Id.[2]
 An interviewer's question did not constitute an unfair labor practice in American Thread Co., 274 NLRB 1112 (1985). At a job interview that took place during the time in which the employer and union were negotiating a new contract, the interviewer asked a job applicant whether he would cross a picket line in the event of a strike. Id. at 1113. The applicant stated that he would have to think about it. He started work the next day. Id. Under the circumstances, the remark, made on a single, isolated occasion, did not constitute a Sec. 8(a)(1) violation. Id.
 In the present case, the Board, adopting the ALJ's conclusion, found a Sec. 8(a)(1) violation solely on the ground that WCIRA asked the question about union affiliation in a job interview. We apply the modified totality approach the Board generally uses to evaluate alleged interrogation. WCIRA asked Maule about his union membership during the course of a job interview. This factor weighs heavily toward a finding of coercion. See United L.N. Glass, Inc., 297 NLRB at 329 n. 1.
 Furthermore, the context in which the interview occurred weighs toward a finding that WCIRA interrogated Maule. We are aware that some common indicia of interrogation were not present. The WCIRA interviewer did not make any remarks indicating that either WCIRA or the distributors were opposed to unions. The distributors had a history of unionization and thus prospective employees were unlikely to see the employers' attitude as generally hostile. However, we consider it significant that the WCIRA was interviewing prospective employees to hire as permanent replacements in the event of a strike. A company interviewing for permanent replacements in the event its employees strike is clearly experiencing a period of conflict with the union. In this situation, even absent other explicit indicators, a prospective employee could reasonably believe that her response to a question about union involvement could affect her job prospects. Unlike the situation in American Thread, Maule did not obtain a job with the distributors after the interview. Adding the factor that the interviews were conducted to identify potential strike replacements, to the heavily-weighted factor that the question occurred during a job interview, we conclude that the question violated Sec. 8(a)(1).
 Next WCIRA analogizes to tort law and argues that a settlement that releases the principals, the distributors, from any liability should release WCIRA, the distributor's agent. WCIRA does not dispute that a consultant can be found liable for its own unfair labor practices. See Blankenship and Assoc. v. NLRB, 999 F.2d 248 (7th Cir.1993). Furthermore, the "one satisfaction rule," under which settlement and release of one joint tort-feasor barred suit against any other, has been widely repudiated. McDermott, Inc. v. AmClyde, 114 S.Ct. 1461, 1470 (S.Ct.1994). Even if the rule had not been repudiated, WCIRA does not explain why tort principles regarding settlement and release should apply to remedies for NLRA violations. Tort law and the NLRA involve different types of remedies and further different goals. The NLRA was designed to further the broad goals of "promot[ing] the full flow of commerce" and "provid[ing] orderly and peaceful procedures for preventing interference by either [employers or employees] with the legitimate rights of the other." 29 U.S.C. Sec. 141(b). These goals are furthered by holding labor consultants responsible for their own acts.
 Finally, we must determine whether the NLRB abused its discretion by requiring WCIRA to post notice of its violation, pursuant to NLRA section 10(c).[3] The broad remedial authority granted to the Board includes the power to require an offender to post remedial notice. NLRB v. Cutter Dodge, Inc., 825 F.2d 1375, 1380 (9th Cir.1987). This court upholds a remedial order of the NLRB unless it is "a patent attempt to achieve ends other than those which fairly effectuate the policies of the Act." Id. Alternatively stated, the Board's remedial actions are upheld unless they are a clear abuse of discretion. General Teamsters Local No. 162 v. NLRB, 782 F.2d 839, 844 (9th Cir.1986).
 The NLRB's order requiring WCIRA to post remedial notice is problematic because the NLRB appears to be using the notice to remedy violations in which WCIRA was not involved. In its original decision and order, the NLRB noted that the ALJ had concluded that the illegal interrogation did not warrant a remedial order because it was an isolated occurrence. The Board stated, "[I]n light of the additional violation we find below, we conclude that a remedial order for the unlawful interrogation is warranted." The additional violation, N.K.S. Distributor's violation of Sec. 8(a)(5) for unilaterally implementing an employee stock purchase plan, did not involve WCIRA. The Board did not find any other violations. Although the Board remanded to the ALJ for further proceedings on the issue of whether the distributors bargained illegally, the distributors and the union settled and the ALJ dismissed all allegations in the complaint except for the allegation of interrogation by WCIRA.
 The Board never attempted to justify imposition of a remedial order solely on the ground that WCIRA conducted illegal interrogation. In the order denying WCIRA's motion to reopen the proceedings, the Board stated, "That other allegations, including one other finding of unlawful conduct, have subsequently been remedied does not change the factual circumstances that formed the basis for concluding that a notice should be posted." This conclusion is incorrect. As stated, the only other violation did not involve WCIRA. Further the other allegations were not only "remedied" but also "dismissed." The only remaining illegal activity was WCIRA's illegal interrogation. This activity was the only basis on which the Board could justify a remedial order. See 29 U.S.C. Sec. 160(c) (NLRB can issue order to remedy unfair labor practices it has found to have occurred).
 In the cross-petition for enforcement submitted to this panel, the NLRB eliminates any doubt that the remedial order was anything other than "a patent attempt to achieve ends other than those which fairly effectuate the policies of the Act." The NLRB states:
 The record indicates that the Distributors, who were advised by and represented by [WCIRA], pursued an illegal bargaining strategy and anticipated that their actions would provoke a strike.... [I]t is apparent that the incident of interrogation was not simply an isolated violation but rather an integral part of an overall pattern of illegal activity engaged in by the Distributors and by the Association....
 [T]he fact that [WCIRA] was not legally liable for any activity other than the interrogation does not negate the fact that, as we have shown, the interrogation was an important component of an entire course of illegal action in which [WCIRA] was a major participant and that, as such, it required a remedial order against all parties responsible for it.
 NLRB cross-petition for enforcement, at 16-18.
 Neither the Board, nor the ALJ on remand, ever arrived at the conclusion that the distributors and the WCIRA pursued an "illegal bargaining strategy," "a pattern of illegal activity," or "an entire course of illegal action." The Board has now made it clear that the posting remedy was designed to address illegal activity even though it never found that such illegal activity occurred. This misuse of its remedial power constitutes a "clear abuse of discretion."
 The illegal interrogation was an isolated incident and was de minimis. We reverse the NLRB's order denying the motion to reopen proceedings. We remand with instructions that the NLRB reopen the case and modify the remedial order in accordance with this memorandum.
 REVERSED and REMANDED.
 
 
 
 *
 Honorable Robert R. Merhige, Jr., Senior U.S. District Judge, for the District of Virginia, sitting by designation
 
 
 **
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by 9th Cir.R. 36-3
 
 
 [1]
 In some cases the Board appears to base its conclusion that the interrogation was unlawful solely on the job interview setting, but a close examination of these cases reveals that the Board also references additional factors to bolster its conclusion. See United L.N. Glass, Inc., 297 NLRB 329 n. 1. (1989)
 
 
 [2]
 Two Ninth Circuit cases applying a totality of the circumstances approach are consistent with these NLRB decisions. In Clear Pine Mouldings, Inc., 632 F.2d at 724, a personnel manager interviewed a job applicant. The manager brought up the union and tried to persuade the applicant not to join. The Ninth Circuit found that it was coercive to urge an applicant not to join a union, because such conduct suggests that the applicant's response will affect his chances of getting employment. Id. at 725-26. See also NLRB v. Bighorn Beverage, 614 F.2d 1238, 1241-42 (9th Cir.1980)
 
 
 [3]
 The Board's remedial authority is set forth in section 10(c) of the NLRA, which provides in relevant part:
 If upon the preponderance of the testimony taken the Board shall be of the opinion that any person named in the complaint has engaged in ... [an] unfair labor practice, then the Board shall state its findings of fact and shall issue ... an order requiring such person to cease and desist from such unfair labor practice, and to take such affirmative action ... as will effectuate the policies of [the NLRA].
 29 U.S.C. Sec. 160(c).